No. 16,224.

THE NEW YORK, CHICAGO AND ST. LOUIS RAILROAD
COMPANY v. PERRIGUEY.

RAILROAD.—*Negligence.*—*Personal Injury.*—*Proximate Cause.*—*Remote Cause.*—*Concurring Causes.*—*Fellow-Servant Rule*—*Defective Head-light.*—*Collision.*—A, as engineer, was in charge of engine No. 172, which he was required to operate with a defective headlight. A had special orders to stop at S, and remain until No. 167 passed. A stopped at S, but in violation of such order pursued his journey with the defective engine, before No. 167 had passed. After leaving S two and three-quarter miles, and having observed the approach of No. 167, A stopped his engine when one and a quarter mile distant from No. 167, there being upon the front of No. 172 two green lights burning brightly, and on board were handlamps

to be lighted and placed in the headlight when it failed, for any reason, which, when placed in the headlight, could be seen for the distance of five miles, but on this occasion they were not so placed, and no headlight was burning. From S eastward the track was straight and free from obstruction, with a decline in the grade for four miles. No. 167 came from the east at the rate of thirty miles an hour, and her engineer and fireman having looked but failed to observe No. 172, collided with the same, in which collision B, the fireman on No. 172, was injured, for which injury he sues the railroad company for damages.

*Held*, that the proximate cause of B's injury was the negligence of A, a fellow-servant of B, in not obeying the order given him to remain on the side-track at S until No. 167 passed, and in failing to place the lighted handlamps in the headlight.

*Held*, also, that the negligence of the railroad company in failing to furnish a proper headlight was a remote cause of the injury.

*Held*, also, that the negligent omission of the company to furnish a proper headlight, and the negligent acts of A were not concurrent in causing the injury.

From the Wells Circuit Court.

*A. Zollars, J. Morris, R. C. Bell, J. M. Barrett* and *S. L. Morris,* for appellant.

*L. M. Ninde, H. W. Ninde* and *W. L. Penfield,* for appellee.

HACKNEY, J.—The appellee sued for damages for injuries sustained in a collision of two engines upon the appellant's railway. He secured a verdict for twelve thousand dollars, the jury returning with the general verdict answers to special interrogatories propounded by each party.

The complaint alleged that the appellee and one Wilson were, respectively, fireman and engineer for appellant, and in charge of engine No. 167, drawing a caboose west out of Ft. Wayne, with instructions to run at the rate of forty miles per hour to Argos, where they should meet and pass train No. 41, drawn by engine No. 172, in charge of Ferris, as engineer; that said Ferris was eastbound from Chicago, with orders to run to Argos

and lay up for No. 167; that the headlight of No. 172 was entirely useless by reason of certain defects, and that said Ferris was a reckless, dangerous, and unskilled engineer, both of which facts were well known to the appellant, the said defect for six weeks and the character of the engineer from the time of his employment, and which facts were unknown to the appellee. There are allegations as to the failure of the appellant to maintain a registry of the arrival and departure of trains at Argos, but appellee's counsel, in their brief, expressly deny any independent cause of negligence by reason of such failure, and we doubt the sufficiency of such allegations to have constituted a cause, proximate or remote, for the injury.

It is further alleged that Ferris ran No. 172 with his train to Argos, where he remained for some time, and, being informed by some one, and believing it true, that No. 167 had passed Argos, he pursued his journey; that it was night and said headlight furnished no light; that when he had gone from Argos about two miles, he saw No. 167 approaching, and stopped his train; that because of the absence of said headlight the appellee and the engineer on No. 167 could not see No. 172 in time to stop their engine and avoid a collision, and that, in the collision which followed, appellee's injuries were sustained.

The record contains numerous questions which have been presented by counsel for the parties with marked ability, but the primal point of contention arises upon the existence or nonexistence of the established negligence of the appellant as the proximate cause of the injury.

The established negligence of the appellant is in requiring its engineer, Ferris, to operate engine No. 172 with a defective headlight. This fact is found specially by the jury with other facts, some of which are as fol-

lows: Said Ferris had special orders to stop at Argos and remain until No. 167 passed; he did stop at Argos, but, in violation of his special order, pressed on in his journey with the defective engine. After leaving Argos two and three-quarter miles, and having observed the approach of No. 167, he stopped his engine when one and a quarter miles distant from No. 167. There were upon the front of No. 172 two green lights burning brightly, and on board were hand lamps to be placed in the headlight when it failed for any reason, which, when placed in the headlight, could be seen for the distance of five miles, but on this occasion were not so placed. From Argos eastward the track was straight and free from obstruction, with a decline in the grade for four miles. No. 167 came on at the rate of thirty miles an hour, her engineer and fireman having looked, but, failing to observe No. 172, the crash came.

There are findings as to how far the green lights could be seen, and there are questions as to whether the findings in that respect are supported by the evidence, but they go only to the question of contributory negligence, and are unnecessary to our decision.

It is also found that Ferris was not a competent and careful engineer, but it is further found that of this fact the company had no knowledge prior to the collision.

And it is found by the jury, as further stated in the answers to special interrogatories, that "such defective headlight" was "the proximate cause of said collision and the plaintiff's injury." Without stopping to analyze this finding, and to decide whether it is one within the province of the jury to make, we find that the conclusion stated is not supported by any evidence.

It is urged by the appellant, and conceded by the appellee, that Ferris and the appellee were fellow-servants;

and if therefore the injury was the result of the negligence of Ferris, the appellee should not recover. The appellant concedes its own negligence in the use of the defective headlight, but insists that this defect was not the proximate cause of the injury, while the appellee insists that this was the proximate cause, and if not the immediate cause, it was concurrent in cause with the negligence of Ferris, and that, therefore, the company may not excuse its participancy in the wrong by asserting that it had a joint wrongdoer. Was the act of the appellant the proximate cause of appellee's injury? In Wharton on Negligence, section 73, is this quotation from Lord Bacon: "It were infinite for the law to consider the causes of causes, and their impulsions one of another; therefore it contenteth itself with the immediate cause; and judgeth of acts by that, without looking for any further degree." Judge COOLEY, in *Lewis* v. *Flint, etc., R. W. Co.*, 54 Mich. 55, says: "As between the causes which precede the [proximate cause, the law can not select one rather than any other as that to which the final consequence shall be attributed, and it stops at the proximate cause, because to go back of it would be to enter upon an investigation which would be both endless and useless."

It is too well settled to multiply citations of authority to the point that it is the immediate, and not the remote, cause of injury that creates the liability, but as there is no rule by which every case can be tested, and known to determine distinctly its class, in the order of causation, we find the difficulty in distinguishing between the immediate and the mediate, or the remote cause of the injury. Cases may illustrate, but definitions are not sufficiently explicit for practical application. In this case the act of the appellant was in directing an engineer to sidetrack at a way station, an engine known by

it to be imperfectly lighted, and to there detain such engine until appellee's engine had passed. The use of the engine at the particular time, and under the particular circumstances, are inseparable from its condition, in determining the negligence of the appellant.

As we have said, it was found by the jury, and is conceded by the appellant, that it was negligence to place the defectively lighted engine upon the main track, in the darkness of the night, without the use of the handlamps, but it must be remembered that to have so placed it was in violation of the orders of the appellant. So placing the engine was the immediate cause of the collision. That was the negligence of Ferris. The absence of light accounts for the appellee's inability to avoid the collision. Not the absence of a particular light, *the headlight,* any more than the absence of the handlamp in the headlight, which handlamp was found sufficient to be seen five miles distant. The absence of the handlamp was due to the carelessness only of Ferris, and not to the appellant. It probably is true, as appellee argues, that if the headlight had not been defective, but had been in good order and burning brightly, the collision would not have happened. It is equally true, that if No. 172 had not been on the trip the collision would not have occurred.

Judge Ray, in his recent work on Negligence of Imposed Duties to Passengers, says: "Where the concurring cause is the independent, wrongful act of a responsible person, such act arrests causation, being regarded as the proximate cause of the injury, the original negligence being considered merely as its remote cause. As, in the law it is the proximate and not the remote cause which is regarded, he who is guilty of the original negligence is not chargeable, but redress must be sought from him who directly caused the injury."

Again he states that "In civil cases, a defendant is.

not responsible for results, except such as are natural, proximate and direct, if such consequences are caused by the acts of others, so operating on his act as to produce the injurious consequences, then he is not liable."

These statements of the rule are fortified by many authorities, as may be seen by reference to that work, pp. 669, 670.

In *Milwaukee, etc., Co.* v. *Kellogg*, 94 U. S. 469, Mr. Justice Strong states the rule in this manner: "The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? * * It is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

He states further: "We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury."

The rules quoted are so fully recognized in the cases in this State as to require no further comment. *Alexander* v. *Town of New Castle*, 115 Ind. 51; *Terre Haute, etc., R. R. Co.* v. *Buck, Admx.*, 96 Ind. 346; *Billman* v. *Indianapolis, etc., R. R. Co.*, 76 Ind. 166, and the cases collected in these decisions.

In determining whether, in this case, there was an intervening responsible cause for the injury, between the omitted duty of the appellant and the injury to the appellee, we reach the conclusion that appellant's wrong was or was not the proximate cause of the injury.

In *Scheffer* v. *Railroad Co.*, 105 U. S. 249, it was held that the death by suicide of one from a disordered mind occasioned by an injury sustained in a collision of railway trains was not the proximate result of the negligence causing the collision. His added act of self-destruction was a new and independent cause.

In *Carter* v. *Towne*, 98 Mass. 567, a druggist sold carelessly two pounds of gunpowder to a minor of eight years, which powder the child exploded and was thereby injured. It appeared that when purchased the powder was taken home by the child and kept in the house for a week, when the boy's mother gave it to him and permitted him to explode it. It was there held that though the druggist was negligent in selling the powder to a child of such tender years, yet the negligence of the mother interposed between the sale and the injury, and cut off the line of causation from the druggist's negligence.

One discharged from service before the end of his term because of the slanderous utterances of another against him, can not recover from the slanderer for the loss of employment, though the remote and indirect cause of his loss; the master's act is the proximate cause of it. *Vicars* v. *Wilcocks*, 8 East, 1.

In selling diseased sheep to a butcher, a farmer fraud-

ulently - represented them as sound, and by reason of their unsound and diseased condition the butcher lost the trade of his customers, and sought damages for such loss from the farmer. It was held that the fraud was but the remote cause of the loss, and the independent intermediate acts of the customers the proximate cause. *Crain* v. *Petrie*, 6 Hill, 522.

Because of a defect in a highway, a traveller went into an adjoining field where he received injuries. In a suit for the injuries as the result of the defect in the highway, it was held that such defect was the remote and not the proximate cause. *Tisdale* v. *Inhab. of Norton*, 8 Met. 388.

In *Anthony* v. *Slaid*, 11 Met. 290, the plaintiff, obliged by contract to support in sickness and in health the paupers of a town, brought suit against one who had beaten one of such paupers, whereby additional service and increased expense was occasioned to the plaintiff. It was held that no recovery could be had.

Of the same class of cases are *Silver* v. *Frazier*, 3 Allen, 382; *Bosch* v. *Burlington, etc., R. R. Co.*, 44 Iowa, 402; *Dubuque, etc., Assn.* v. *City and County of Dubuque*, 30 Iowa, 176, and *Lewis* v. *Flint, etc., R. W. Co.*, *supra*. In the last case are cited by Judge Cooley, *Daniels* v. *Ballantine*, 23 Ohio St. 532, and *McClary* v. *Sioux City, etc., R. R. Co.*, 3 Neb. 44, with this statement: "In each of these cases the negligence of the defendant left the property of the plaintiff where, by the act of God,—in one case a flood, and in the other a tornado,—it was lost or injured, and in each the act of God, and not the negligence, was held to be the proximate cause of injury."

Our own case of *Alexander* v. *Town of New Castle*, *supra*, held that leaving negligently an unprotected excavation near a public walk, and into which a prisoner in

custody hurled the officer, furnished no cause of action against the town. The negligence of the town made the act possible, but the act of the prisoner was the immediate cause of the injury sustained.

So in the case before us the negligence of the appellant made it possible for Ferris to set the dangerous obstruction upon the railway, but it was his act in placing it there in violation of expressed instructions that caused the injury. It was not negligence for the appellant to have left its engine standing in its yards in a proper place for repairs, nor was it negligence to have left it upon a siding at Argos until No. 167 had arrived and passed. So standing, it was harmless. That it would have been moved out upon the main track in the face of an approaching train, in violation of the direct orders of the company, could not have been reasonably anticipated by the appellant. No reasonable prudence and foresight could have determined upon such a result without a knowledge of the recklessness and ignorance of the engineer, a fact here found to have been unknown.

Suppose this suit were against Ferris for the damages resulting to appellant's engines or by the appellee for his injuries, could he assert, with reason, that his negligence was not the proximate cause of the collision? Suppose the conduct of Ferris in promoting the collision to have been wanton or willful, could it be said that the prior negligence of the company was the proximate cause of the collision? We believe not.

The movement of the train under the management of Ferris was the independent wrongful act of a responsible person; such act of Ferris was not induced by the act of the appellant, nor did the act of Ferris so operate on the act of the appellant as to cause appellant's act to produce the injury. If it had so operated, according to

the authority we have cited, responsibility would not attach to the appellant's act.

The absence of the headlight was not the cause of the injury. Such absence was but an incident to the appellee's failure to avert the collision. We can not escape the conclusion that the wrongful act of Ferris was the immediate cause of the injury.

Regarding the appellee and the engineer Ferris as fellow-servants, as it is agreed we must, can we hold the appellant responsible for the wrongful act of Ferris? The appellee contends, as we have shown, that the assumption of the negligence of a fellow-servant does not include his negligence where it concurs with the negligence of the master in producing injury. We are advised of the rule so asserted and do not desire to infringe that rule, as we have held it in *Rogers* v. *Leyden*, 127 Ind. 50.

The only question we entertain is as to the application of the rule. Where the defect in the machinery, or the want of skill of a fellow-servant, or the unsafety of the place where occupied, are within the knowledge of the master, are not known to the servant, and are the immediate cause, or one of the concurring immediate causes, of the injury, there is not, and ought not to be, any doubt of the application of the rule that the master may not hide his liability behind the concurring act of his employe.

In addition to the cases cited in *Rogers* v. *Leyden*, *supra*, we cite the authorities of the appellee:  2 Thompson Neg., 981; *Cayzer* v. *Taylor*, 10 Gray, 274; Wharton Neg., sections 3–788; 1 Shear. & Redf. Neg., sections 25 to 28; *Hawkesworth* v. *Thompson*, 98 Mass. 77; *Phelps* v. *Wait*, 30 N. Y. 78; *Pfau* v. *Williamson*, 63 Ill. 16.

We have found that the act of the appellant was not a proximate cause of the injury; that the act of Ferris was

the immediate cause of the injury, and it follows that the two acts were not concurrent in causing the injury.

We doubt if a case can be found where an act of the master, though negligent but not causing injury or concurring as a cause of injury, is coupled with a wrongful act of a servant and made the basis of recovery for such injury.

The case of *Paulmier* v. *Erie R. R. Co.*, 34 N. J. 151, cited by appellant, and in *Rogers* v. *Leyden*, *supra*, as the principal authority, presented this distinction from the case before us: there was a latent defect in the roadbed, of which the company and the plaintiff's fellow-servant had knowledge, the company owed to the servant the duty of disclosing that knowledge and in this duty failed when the fellow-servant drove the engine upon the latent danger and caused plaintiff's injury. There defect, as in *Rogers* v. *Leyden*, *supra*, was the immediate cause of injury.

We have, in our own State, many cases holding a liability where the master knows of the lack of skill of a fellow-servant, and the plaintiff has no such knowledge, and from which lack of skill injury results. There, however, the lack of skill is the direct cause of injury. If the rule were otherwise, the duty to employ suitable servants and machinery would be defeated.

If the rule contended for by appellee should prevail, the master would become an insurer of the safety of his servant against the negligence of a fellow-servant, however gross, if the negligence of the master, however slight and however remote from the cause of injury, could be discovered to have offered an opportunity for the negligence of such fellow-servant.

We conclude that the answers to interrogatories are in irreconcilable conflict with the general verdict, and that the motion of the appellant for judgment *non obstante veredicto* should have been sustained.

The judgment of the lower court is reversed, with directions to sustain said motion.

Filed May 19, 1893.

## ON PETITION FOR A REHEARING.

HACKNEY, J.—A petition for a rehearing has been presented by elaborate and able briefs, and we have given it our most careful consideration.

If we could believe, as counsel seem to believe, that the rule of this case would destroy the obligation of the master to supply the servant with safe appliances for the service in which he is engaged, we would unhesitatingly uphold that obligation. But when the master can say, as the jury have found in this case, that he has supplied a headlight which, if burning, could have been seen the distance of five miles, and when his only failure is in the character of the lamp, and not in the efficiency of the light for practical uses and in the protection afforded his servants, it can not well be said that there has been an abandonment of that obligation. The appellee could contend for no more than that the absence of an efficient light was the cause of the collision. The means of supplying it were provided by the master. The employment of the means was a duty resting upon Ferris, the appellee's fellow-servant, and not upon the master. If the lamp of the headlight had not been out of repair, Ferris should have lighted it, and his failure to do so could not have been charged to the appellant. If it had been the duty of Ferris to take on a new headlight at Argos, and he had failed to do so, when it was provided by the company, such negligence would not have been chargeable to the appellant. It is not even suggested that it was not the duty of Ferris to light the handlamps and place them in the headlight, nor is it intimated that his failure to do this is properly due to the appellant's negli-

gence, or, of itself, creates any liability against the appellant.

Taking out of consideration the violation, by Ferris, of explicit orders to remain at Argos until the appellee's train had passed that station, there would seem to be but little basis for the claim that the appellant's omission was. the cause of the collision. It would then present the case upon the absence of a light as the cause of the collision, or as the cause for the failure to avoid the collision, the appellee insisting that it was the absence of a particular light, the regulation headlight, and the evidence having shown the presence of efficient lamps, not burning because of the negligence of appellee's fellow-servant. To cast the responsibility upon the company and not upon Ferris would be to charge the company for the mere difference in the form of the lamps effecting the same results, avoiding the collision, and thus predicate our decision upon a shadow while abandoning the substance. To do this would be to strike down a well-settled rule, the fellow-servant rule, and hold the master liable where the direct and immediate cause of the injury is the negligence of a fellow-servant. To so decide would run counter to that well established rule, observed in the original opinion, and fortified by the unbroken line of authority for centuries, that it is the proximate, and not the remote cause of injury against which relief is granted.

Again, the appellee urges that the servant does not assume the negligence of the master, nor of the fellow-servant participating with that of the master. Again, we assent to this proposition, but it does not imply that the master is liable for an injury occasioned directly by the negligence of the fellow-servant, although the master may have been guilty of negligence not participating in the injury. The law does not punish the

master for a negligence which occasions no injury.   If
it did, the injury would not be a condition of recovery.
When we find that the appellee's misfortune was due to
the negligence of Ferris, a fellow-servant, and that the
appellant's omission was not a juridical cause of the in-
jury, we have then reached the point that though such
omission was negligent, and co-existed with the neg-
ligence of Ferris, it was not a concurrent cause of the
injury.   The omission may have concurred as a condi-
tion, but not as a cause, and herein there is a wide dis-
tinction.   See Wharton's Law of Negligence, section
85, p. 323.   This distinction is well stated in *Bostwick*
v. *Minneapolis, etc., R. Co.*, 49 Am. and Eng. R. R. Cases,
527, as follows:   "Negligence is contributory when, and
only when, it directly and proximately induces the in-
jury in whole or in part.   *   *   *   Where one party
has been negligent, and a second party, knowing of
such antecedent negligence, fails to use ordinary care to
prevent an injury which the antecedent negligence ren-
dered possible, and the injury follows by reason of such
failure, the negligence of the second party is the sole
proximate cause of the injury."   See, also, *McGahan* v.
*Indianapolis Natural Gas Co.*, 37 N. E. Rep. 160.

Again, the appellee urges that if it had not been for
the appellant's omission the collision would not have
occurred.   This is but an effort to reach the conclusion
that appellant's omission was a proximate cause of the
injury, but the argument is treated by Wharton (Neg.
323) as sophistical.   In discussing the proposition that
remote negligence is not contributory negligence, that
learned author says:   "A person, it has been seen, is
juridically the cause of an injury, if his act (or omis-
sion), supposing that there is no intervention of dis-
turbing independent moral agents, would be, according
to the usual course of events, followed by such injury.

This, as is shown by a distinguished contemporary German jurist, is the true application of Aristotle's exposition of causation, which is accepted by the Roman jurists, and is equivalent to the distinction between proximate and remote causation, as expressed by Anglo-American law.

"It is not enough * * to apply this definition to negligence (to declare), that if the injury would not have occurred had it not been for the plaintiff's negligence, then the plaintiff's negligence is to be regarded as the cause of the injury. Of multitudes of antecedents can it be truly said, that if they had not existed the injury would not have occurred; yet of how few of such antecedents can it be said that they juridically caused the injury.

"A gas company, to take one of the cases which the present discussion presents, neglects to close a leaking pipe, and in consequence of the leakage the plaintiff is injured. Had the plaintiff not been in the town at the time,—had the plaintiff never been born,—had there been no gas in the particular pipe,—had there been no gas company in the particular town,—had gas never been invented,—then the injury would not have occurred. That the plaintiff was in the town at the time,—that the plaintiff existed,—that there was gas in the leaking pipe,—that there was gas in the town,—that there was gas any where, —all these are *conditions* of the plaintiff's injury, without which it would not have existed; but no one of these is a juridical cause of the injury. To constitute a juridical cause, therefore, it is not sufficient to say that it is enough that without the existence of the condition in question the injury would not have taken place."

In the present case, the defect in the lamp of the headlight was a condition; the cause of the collision was the absence of light. The absence of that light was not the

defect, but was the failure of Ferris to light the hand-lamps and place them in the headlight from which the presence of his engine could have been seen for the distance of five miles and the collision averted.

It is insisted that the decision in this case is in conflict with that in the *Pennsylvania Co.* v. *Congdon, by Next Friend*, 134 Ind. 226, 33 N. E. Rep. 795.

The complaint in that case charged a defective lantern, from which defect its light was easily extinguished by the wind, such defect being known to the company and unknown to the servant. On a moving freight train the wind blew out the light, leaving the brakeman in the darkness, and required, for the safety of the train, to give signals with his lantern lighted. To again light it, it was necessary to go forward to the engine, and, in doing so, he was thrown upon the tracks and injured. In considering the question, the court accepted the management of the train—suddenly applying the air brakes —as proper, and not negligent. It was held that proximate cause is not necessarily that nearest in time to the injury, and that the alleged negligence of the company in supplying a defective lantern was the moving and dominating cause of the injury.

With this holding we fully agree, and are unable to observe its conflict with the holding in this case. It is always the first duty of the court to ascertain the dominating or proximate cause, and there apply the liability, disregarding the mere incidents preceding or following that cause. If the original act or omission can be found to have been the moving dominant cause of injury, it will not be insulated by a mere incident gathered up and carried forward with it. Nothing less than an intervening responsible agent will cut off the line of causation, however remote in time.

This we understand to be the holding in the case re-

ferred to. There the absence of light was charged to the master's fault, and as such was the cause of the injury, uninterrupted by an independent cause or agency. Here the absence of light was owing to a fellow-servant's omission, which sustained no relation to the master's omission.

We feel that there is no doubt of the correctness of our position, and are unable to agree with the appellee in his petition. Nor can we believe that the ends of justice require us to order a new trial as asked. The knowledge of the appellant of the want of skill on the part of Ferris was in issue, and it was found expressly that no such knowledge existed. The record does not confirm the suggestion that this issue was inadvertently overlooked, and we find it necessary to ignore the appellant's assignment of error upon the overruling of its motion for judgment upon the answers to interrogatories, notwithstanding the general verdict, if we should order a new trial.

The petition for a rehearing is overruled.

DAILEY, J., did not participate in this case.

Filed June 19, 1894.

## CONCURRING OPINION.

HOWARD, J.—Three distinct acts of negligence are considered in this case,—one act by the appellant company, the sending out of an engine upon the road at night without a sufficient headlight; and two acts by the engineer Ferris, one in failing to keep his train upon the sidetrack at Argos until appellee's train had passed, and the other in failing to put up and light the hand lamps which appellant had provided as a substitute for the regulation headlight. From one or more of these acts of negligence appellee received his injury. The appellant company admits its own negligence, but contends that not its own negligence but the negligence of Ferris, co-

employe of appellee, was the proximate cause of the injury.

It is the law that one can not excuse his own negligence by showing that some one else was also negligent. If an injury is caused to an employe by the concurrent negligence of his employer and of a co-employe, the employer can not shift the burden of liability from his own shoulders to those of the co-employe. In such a case, it is only when the employer is himself free from fault that the liability rests wholly upon the co-employe. If the negligence of the employer sets a cause in motion which continues till, in the end, it becomes a constituent element in bringing about the injury, so that the injury would not have occurred without the negligence of the employer; then, although the negligence of co-employes or other third persons may have contributed to the final result, yet the original negligence, still active to the end, is, in law, a proximate cause of the injury.

It was said in *Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242, that the master must, either personally or by his agent, exercise reasonable and proper care to provide and keep in suitable repair and condition, safe and suitable machinery and appliances, adequate and sufficient for use by the servant in and about the business in which it is to be used by him. And if a servant be injured in consequence of a neglect of such duty, or a negligent discharge of it, he being in the exercise of ordinary care, the master is liable.

It necessarily follows that, in the discharge of the duty resting upon and owing by the master to the servant, the acts of the person authorized by the master to perform the duty are the acts of the master. The liability of the master does not depend upon who performs the duty, but upon the existence of the duty itself, which the master must perform, and he can not, by delegating

it to another, absolve himself from liability for its non-performance. The law will not permit the master to evade the duty which it has cast upon him by shifting it upon another.

Further, as to proximate and concurrent causes, see Shear. & Redf. Neg., section 346 and notes.

If, therefore, in this case, the appellant company sent out a train at night without a headlight, and a collision occurred in consequence, it seems very clear that the company can not relieve itself of liability by showing that its servant disobeyed certain orders, as to remaining on a sidetrack at Argos, or otherwise. At most, this would show another act of negligence; it would not, in any degree, remove appellant's own negligence. The dark train upon the track was dark because so sent out by appellant; and that darkness was an essential element in bringing about the collision. This cause was the direct result of appellant's negligence, and the presence of another cause due to a servant's disobedience to orders can not lessen appellant's liability for its own negligence actively present in the collision.

The failure of the engineer Ferris to remain at Argos, therefore, in no way shifts the burden from appellant.

But the jury also found that while the company failed to send a regulation headlight with the engine, it did send as substitutes two handlamps, which, if lit, could have been seen upon the engine a distance of five miles. It would have been the duty of the engineer to have lit the headlight if it had been furnished by the company; it was equally his duty to light the substitute handlamps which were furnished by the company. The company's duty, in this regard, was done when it furnished the proper lamps; the engineer's duty was to light the lamps. It would seem, therefore, that the company performed its duty by furnishing lamps, which, though not the

best, were yet sufficient to give light for five miles, and so avoid the accident. The engineer, however, failed in his duty to light the lamps. The jury found that the engineer was incompetent, but they also found that the company was at the time unaware of such incompetency. It would seem, therefore, that the proximate cause of the injury to appellee was the negligence of his co-employe in failing to light the handlamps on the engine.

With some reluctance I am, consequently, constrained to concur in the opinion overruling the petition for a rehearing of this case.

Filed June 19, 1894.