Davis, J.
George R. Wilson was a fireman in the service of the appellant on a passenger train. Th.e appellant, on the 6th day of December, 1889, at the station of Dune Park, negligently, in the evening, left the-switch open, and thereby caused the train upon which- *489 lie was firing to run off the main track onto the side track, whereby said passenger train collided with a freight train standing thereon, and instantly killed said fireman without fault' on his part. The appellee recovered judgment in the court below for' two thousand dollars.
The lamp provided for this switch was duly lighted and placed in position on this evening, as a signal that the switch was closed and locked, but the light accidentally went out an hour and a half before the passenger train reached this point.
It was provided by the rules of the company that the absence of a light at the switch should be regarded as a signal of danger. The engineer in charge of the passenger train was familiar with the rule and also saw when within a half mile of the switch that the light was out, or, rather, he failed to see any light there.
It is, therefore, contended’ by counsel for appellant that the engineer was negligent under the circumstances in failing to stop the passenger train, and that his negligence was the proximate cause of the injury, and that the negligence of appellant in leaving the switch open was a remote cause. In this connection it is proper to suggest that if we understand the record it appears that if the lamp which was lighted and placed on the switch as a signal of safety had not accidentally gone out that night before the arrival of the passenger train, the collision and wreck, which occurred on the switch track, would not only have been invited, but would have been inevitable. Therefore, the question is suggested whether the fact that the engineer failed to stop the passenger train on the occasion constituted an efficient and direct cause of the injury, and whether such cause, under the circumstances, was the independent wrongful act of a responsible third person. In other words, does it con *490 clusively appear that this omission of the engineer was wrongful, and that such act was ah intermediate and efficient cause disconnected from the primary act of negligence on the part of appellant and self-operatihg, which produced the injury. New York, etc., R. R. Co. v. Perriguey, 138 Ind. 414; Pennsylvania Co. v. Congdon, 134 Ind. 226.
In Coppins v. New York, etc., R. R. Co., 122 N. Y. 557, s. c. 19 Am. St. R. 523, the facts were substantially that the train on which Coppine was employed as a brakeman was derailed by reason of a misplaced switch, and he was seriously injured. Martin Schrom was an employe of the company, and it was his duty to shift and close the switches. He negligently left the switch open. The Court of Appeals in the discussion of the question presented, says: “If the evidence in the case justifies the conclusion that the engineer of the passenger train was negligent in not observing the target at the misplaced switch, or in running his train at a high rate of speed past the station in the absence of signals that the track was safe, that fact of itself is not available as a defence, if the negligence was established on the part of the defendant.” See, also, Stringham v. Stewart, 100 N. Y. 516.
In the Perriguey case, supra, Judge Howabd says: “If the negligence of the employer sets a cause in motion which continues until, in the end, it becomes a constituent element in bringing about the injury, so that the injury would not have occurred without the negligence of the employer; then, although the negligence of co-employes or other third persons may have contributed to the final result, yet the original negligence, still active to the end, is, in law, a proximate cause of the injury.” See Grand Trunk R. W. Co. v. Cummings, 106 U. S. 700.
In discussing the question of proximate cause in *491 Ohio, etc., R. W. Co. v. Trowbridge, 126 Ind. 391, Judge Elliott says: “The principle underlying this doctrine is that there must be some connection between the effect and the cause—between the injury and the wrong. It is not necessary, however, that there should be a direct connection between the wrong and the injury; it is enough if it appears that but for the wrong no injury would have occurred, and that the injury was one which might have been anticipated. Louisville, etc., R. W. Co. v. Nitsche, ante, p. 229; Milwaukee, etc., R. W. Co. v. Kellogg, 94 U. S. 469. It is, indeed, not necessary that the precise injury which, in fact, did occur should have been foreseen; it is sufficient if it was to be reasonably expected that injury might occur to some person engaged in exercising a legal right in an ordinarily careful manner.”
In Cincinnati, etc., R. W. Co. v. Lang, Admx., 118 Ind. 579, the court says: “If the master’s negligence is the principal cause of the injury, then he will not be absolved from liability, although the negligence of a fellow-servant may have concurred in causing the injury.”
In Pennsylvania Co. v. Burgett, 7 Ind. App. 338, this court said: “The general rule is that where a servant receives an injury occasioned, in part, by the negligence of the master and in part by the negligence of a co-employe, the servant, if without fault on his part, may maintain an action against the master for such injury.”
Counsel for appellant in this case concede that where the negligence of the master and his servant concur in producing an injury to another servant, the concurring negligence of the coservant will not relieve the master from liability, but their contention is that “Bickle’s negligence was the immediate, sole, and proximate cause of the injury complained of.”
*492 Bickle was the engineer in charge of the passenger train.
Counsel say: “Could the leaving of the switch at Dune Park open by Demsky have caused the death of Wilson, had Bickle stopped when he discovered that the switch light was out, and not proceeded further until he learned that the switch was closed, or, if open, until he closed it?”
Again: “In the case in hearing, the death of Wilson was not directly attributable to the negligence of Demsky. It was the independent negligence of Bickle that made Demsky’s negligence injuriously fatal to Wilson.”
Counsel contend that the Perriguey case supra supports their position and is decisive of this case. The opinion in that case is founded upon the proposition that the engine in charge of Ferris was furnished with two good and sufficient hand lamps as a substitute for the regulation headlight, and that it was the duty of the engineer to light the headlight, whether it was the regulation light or the substitute hand lamps; and that the engineer failed in his duty to light the lamps; and that the proximate cause of the injury to Perriguey was the negligence of the engineer in failing to light the hand lamps.
Judge Hackney says: “In the present case the defect in the lamp of the headlight was a condition: the cause of the collision was the absence of the light. The absence of that light was not the defect, but was the failure of Ferris to light the hand lamps and place them in the headlight, from which the presence of his engine could be seen for the distance of five miles and the collision averted.”
In considering the opinions of courts, it is well to bear in mind the observations of Chief Justice Marshall: “It is a maxim, not 'to be disregarded, that general expressions, in every opinion, are to be taken in connection with *493 the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the' judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles, which may seem to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.” Cohens v. Virginia, 6 Wheat. -*265.
Again he says: “The positive authority of a decision is coextensive only with the facts on which it is made.” Ogden v. Saunders, 12 Wheat. *333.
The value as precedents of the cases hereinbefore cited, in the decision of the question before us, should be measured by the rule above stated. It is not always easy to determine what is the proximate cause of an injury. As Judge Hackney well says in the Perriguey case supra: “Oases may illustrate, but definitions are not sufficiently explicit for practical application.”
The general principles of the law in relation to proximate and remote causes, in actions growing out of negligence, are stated in the cases cited and are abundantly supported by the authorities to which reference is therein made.
In the light of these principles, was the negligent act of appellant the proximate cause of Wilson’s injury? We should not, in the language of Judge Hackney, in determining this question, “predicate our decision upon a shadow while abandoning the substance.” 138 Ind. 414, supra.
The ruíte of appellant, requiring a light at night at the switch, was intended as a signal that the switch was set and locked. When such light was not shown, its ab *494 sence was intended as a signal of danger. When the light was not shown by the person whose duty it was to light and place the lamp in position, it was the duty of the engineer, under the rules of appellant, to stop his train until the condition of the switch was ascertained. It should be borne in mind that when the light was shown it was intended as a signal that the switch was set and locked, and that it was not then intended that the engineer should stop his train. In this case the lamp was duly lighted and placed in position. Suppose the collision had occurred while the lamp was burning. Could appellant have escaped liability on the ground that the act of the employe in showing the signal of safety was the proximate, and the negligence of appellant in leaving the switch open the remote, cause of the accident? We apprehend not.
On the other hand, can appellant shield itself from liability because the lamp which was lighted and placed in position as the signal of safety accidentally went out before the arrival of the train? In other words, was the act of the engineer, in failing to stop his train, under the circumstances of this case, a sufficient, intermediate and independent cause operating between the original wrong of appellant and the injury, to excuse appellant? The switch was negligently left open. Was there notan unbroken connection—a continuous operation between the wrongful act and the injury? If it was conceded that the engineer omitted or failed to perform his duty, in not stopping the train because the light which falsely announced that the switch was safe had accidentally gone out, and that such act on his part contributed as a cause to the injury, yet the fact remains that the wrongful act of appellant in leaving the switch <5pen was a natural, proximate, and direct cause which contributed to the injury.'
*495 In the case of Clyde v. Richmond, etc., R. R. Co., 59 Fed. Rep. 394, decided in January, 1894, by the Circuit Court of the United States for the N. D. Georgia, which was an action by a fireman, similar in its essential featurés to the case in hand, the cause of the accident was the worn and defective condition of a rail, combined with the speed of the train, which was considerably greater than that which the schedule authorized. The negligence relied upon by the plaintiff was the worn condition of the rail. The negligence of the engineer in running the train at an improper rate of speed was shown by the evidence. It appeared that the excessive speed of the train would not have resulted in an accident had there been a proper and suitable rail at the point where the accident occurred, and that the worn and negligent condition of the rail would not have caused the derailment had the train not been running at an improper rate of speed. It was therefore contended that as the accident was caused by running the train at an excessive rate of speed there could be no recovery against the company.
The court, in the course of the opinion, says: “The rule clearly established at common law is that where an employe is injured by the negligence of the master in furnishing defective machinery and appliances, combined with the negligence of a fellow-servant, both contributing thereto, the master is liable.” It is contended that, even if the defendants were guilty of negligence, their negligence was not the proximate cause of the accident. If the worn condition of the rail was instrumental at all in causing the derailment, it was just as much a present and effective cause of the accident as was the improper rate of speed. It was not in any sense a remote cause, for whatever it contributed, it contributed at the time and place. Both the improper speed of the train and the worn condition of the rail (assuming *496 the report of the master to be correct) were the proximate causes.”
In. this case, the most appellant can claim is that the engineer violated the rule of the company in failing to stop his train because there was no light shown at the switch. If he had stopped his train, there would have been no accident. In the Georgia case, if the engineer had not violated the rule of the company by running his train in excess of the schedule rate, there would have been no accident. The worn and defective rail would have been harmless if the train had not attempted to •pass over it at an extraordinarily high rate of speed. The open switch would not have caused a collision if the train had not run into it. Notwithstanding the act of the engineer in doing that in the absence of which the accident would not have happened, the court holds that the negligence of the company was a proximate cause of the injury.
If that case is correctly decided on the facts, it necessarily follows that the failure of the engineer to stop the train does not excuse the negligence of appellant in leaving the switch open. In our opinion, under the facts and circumstances of this case, the act of appellant in failing to set and lock the switch was a proximate cause of the collision.
This conclusion is in harmony with the decision of our own Supreme Court hereinbefore cited as we understand them.
The entire argument of counsel for appellant on the question of contributory negligence, is as follows:
“We think that the special findings of the jury show that the deceased, Wilson, was guilty of negligence contributing to his injury. It is impossible to believe that he did not know, or that, by the exercise of reasonable diligence he might not have known, that the switch *497 light was out when a half mile east of the switch. It was his duty to keep a lookout for this. If he might have known that the light was out, it was his duty not ■only to call the engineer’s attention to the fact, but to .see to it that the engine and train were stopped until he ■could know that all was safe. We think that the special findings of the jury show this. Ue could have seen the danger signal by the exercise of reasonable care, and have requested the engineer to stop. Failing to do so, he was guilty of contributory negligence.”
One of the rules of the company in relation to the duties of said decedent were as follows: “When running upon the road, they must keep a constant lookout ahead, when not engaged in firing, so as to give notice to the engineer of any signals or indication of danger.”
The answers of the jury to interrogatories show that after the engine passed around the curve, approaching Dune Park station, Wilson was engaged in putting coal into the furnace of the engine, and that while he was so engaged he had to look into the furnace to see where to place the coal, and that the effect of the heat and bright flame in the furnace was to dazzle his eyes, and to some extent affect the power of his vision; that the engine was then running forty to forty-five miles per hour, and that when he got through feeding the furnace, some time elapsed before his eye could adjust itself to see objects or the absence of objects in the distance; that owing to the curve east of said Dune Park station, the engineer and fireman on an approaching train from the east, could not see whether the switch lights were burning or not at said station until after rounding the curve, and after said curve is rounded by trains moving westward the track is straight and somewhat down grade for a distance of half a mile; that said decedent was engaged *498 ill feeding the furnace when the engine rounded the curve, and that he could not be on the lookout for switches while he was thus engaged, and that under the circumstances in which Wilson was placed at the time after he had finished feeding said furnace, and after his vision had recovered from the glare of the furnace so that he could discover whether said north switch light was burning or not, it was too late for him to give warning to Bickle.in time to stop the train and avoid the collision.
The jury further found that before Wilson had finished feeding the furnace, Bickle had discovered that the switch light was out, and determined to run on without checking the speed of the train; that owing to the speed at which the train was running, and its being down grade, the train would have required a distance of a quarter of a mile or more to be stopped; that by the rules of the appellant, Bickle was charged with the safety of the train and responsible, with the conductor, for keeping the train on time, and that it was the engineer’s duty ,to have his train under such command as to be able to-stop should the switch prove wrong, and that it was for the purpose of carrying out said rules and keeping his-train on time that Bickle did not check the speed of the train until it became too late to stop it and avoid the collision, and that by the rules of the company the fireman was placed under the immediate superintendence of the engineer, and was required to obey his reasonable directions in all matters concerning his duty.
The general. verdict affirms that Wilson was without fault. The special findings are not in conflict with this view. In fact, it is expressly found that his duties and circumstances were such at the time that he could not have discovered the absence of the switch light in time to have given warning to the engineer to stop- the train *499 and avoid tlie collision. If he had discovered that the light was not burning, all he could have done was to give notice of this fact to the engineer, and it clearly appears that the engineer had the notice that the light was not burning as early at least as Wilson could have communicated such knowledge to him.
Filed Oct. 10, 1894;
petition for a rehearing overruled Dec. 11, 1894.
It is affirmatively found that the failure of appellee to give such notice did not contribute to the injury, because without reference to the notice the engineer had determined to proceed without checking the speed of the train.
In the light of the general verdict, and the answers of the jury to the interrogatories, it requires no argument, in the opinion of the writer, to show that Wilson was not guilty of any negligence on his part that contributed as a proximate cause to the injury.
There are other interrogatories which in some respects are apparently in conflict with those to which we have referred, but such conflict in the special findings with each other can not be resorted to for the purpose of overthrowing the general verdict. Where the answers to the interrogatories contradict or negative each other, the general verdict stands. It is a familiar rule that the special findings control only where they are in irreconcilable conflict with the general verdict.
Judgment affirmed.