## GRAND RAPIDS AND INDIANA RAILWAY COMPANY v. PETTIT.

[No. 3,291.    Filed June 19, 1901.]

MASTER AND SERVANT.—*Employer's Liability Act.—Construction.*— Clause 2 of §1 of the act of 1893 (§7083 Burns 1901), providing that a railroad corporation shall be liable for injuries suffered by an employe resulting from the negligence of any employe to whose orders the one injured was bound to conform, must be held to apply only to cases where the employe claiming damages was, at the time of the injury, acting under the special direction of another employe whose orders he was bound to obey. *pp. 123, 124.*

SAME.—*Employer's Liability Act.—Injury to Brakeman.—Conductor's Negligence.*—A brakeman whose duty it was to make couplings without special orders from anyone, and who was injured while attempting, without special orders, to make a coupling, cannot recover for such injuries, although the injury was due to the negligence of the conductor of the same train. *p. 127.*

SAME.—*Injury to Brakeman.—Negligence of Fellow Brakeman.*—A brakeman cannot recover for personal injuries caused by the negligence of a fellow brakeman in giving improper signals to other employes, which signals were repeated by the conductor of the same train. *pp. 127, 128.*

From Allen Circuit Court; *E. O'Rourke,* Judge.

Action by Elsworth S. Pettit against the Grand Rapids, etc., R. Co. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Allen Zollars, C. H. Worden* and *F. E. Zollars,* for appellant.

*L. M. Ninde, H. W. Ninde, D. B. Ninde* and *L. J. Ninde,* for appellee.

Grand Rapids, etc., R. Co. v. Pettit.

HENLEY, J.—This action was commenced and prosecuted by appellee for the recovery of damages against appellant for injuries to his hand received by appellee while in the employ of appellant. Appellee was a brakeman on a freight train, and received his injury while attempting to couple cars at Portland, Indiana, on the 24th day of August, 1897. It is averred, in substance, in the first paragraph of complaint that appellee was a freight brakeman in the employ of appellant; that at Portland, Indiana, appellant had a main track running north and south, east of the depot building, and a side-track running north and south, west of the depot building and about twenty-five feet from it, and connected by switches at the north and south ends; that there was a public street extending east and west just south of the depot building and about twenty-five feet from it; that upon the day the injury occurred, a train had pulled in from the main track on a side-track; that it was the duty of appellee's fellow brakeman, Murphy, under the direction of the conductor to uncouple the cars so as to leave a passageway between them upon the street; that the train came in upon the side-track from the south; that afterward it became the duty of the conductor and engineer in charge of and in control and management of the train to cause the portions of the train disconnected to be coupled together, and it then and there became the duty of appellee to make the coupling and connect said portions of the train together, and that in the performance of that duty he was then and there obeying and conforming to the orders of his said conductor, who had authority from appellant to act as appellee's superior in that behalf and to direct appellee to perform said duty; that on account of the curved condition of the side-track and the obstruction of trees and other things, appellee could not see the engineer in his engine, and it became necessary for two brakemen who were assisting in the operation of the train to be stationed between the street and the engine; that Murphy, one of the brakemen, was stationed between the

depot and the side-track fifty feet north of the street, and Southern, another brakeman, was stationed fifty feet north of Murphy, and that they were so stationed in order to receive from appellee, who was to make the coupling, the necessary signals in the management of the train, so that the engineer might safely back the train in making the coupling at the street; that while these brakemen were so stationed, the conductor of the train, who was authorized by the appellant to control its movements and who had charge of the train and had a right to direct appellee and to give signals and control and command the engineer in the movements of his engine and train, was stationed on the main track opposite where the engine stood, about fifteen feet therefrom, and was so stationed that he could see the signals given the engineer by the brakeman Southern, who was nearest to the engine, and that Southern could see and receive the signals from Murphy, who could see those given by appellee; that the engineer could see Southern and receive signals from him, and could also see the conductor and any signals which he might give; that while the various parties were so situated and located, appellee, as it was then and there his duty, proceeded to give signals to said Murphy to be transmitted by Southern to said engineer to back up said train so that the same might be coupled together by appellee; that appellee, in the discharge of his duty, gave to said Murphy the proper signals to back said train slowly so that appellee could safely make said coupling, which signals said Murphy gave to said Southern and the said Southern gave the same to said engineer; whereupon said engineer started to back his train while appellee was between said cars preparing to make said coupling; that in obedience to said signals, the train started to come slowly and in suitable manner to enable appellee safely to couple the same; whereupon said conductor carelessly, negligently, and recklessly gave the said engineer a signal to back up with speed and violence, and the engineer,

obeying said signal negligently given him as aforesaid, drove his said engine and cars thereto attached back against that part of the train to which appellee was about to couple the same with great speed and violence, so that the detached cars were struck with such violence that appellee's hand was caught between the deadwood and bumpers of said cars and mangled and injured. It is further averred that appellee's injuries were received without any fault on his part; that at the time the conductor gave said wrong and erroneous signal, and at the time the engineer received the same from the conductor, and acting thereon, the conductor was the superior of the engineer in that behalf, and had the right and authority to command and direct the engineer in that behalf. It is further averred that the conductor as appellee's superior in said employ had the right to command and direct him in his duties and then and there to order and direct him to go between said cars and to couple the same when he should bring the parts of the train together, and, in obedience to such orders, appellee had gone in between the cars to couple the same when he received his injury. There was a trial by jury and a verdict for appellee. With the general verdict the jury returned answers to interrogatories covering the whole case.

It is not necessary to consider the averments of the second paragraph of complaint, which is based upon the alleged negligence of the engineer, because the jury have, in the answers to interrogatories, affirmatively shown that the verdict is based upon the first paragraph of complaint.

Appellee has attempted to bring his case within the provisions of the employer's liability act, §5206s Horner 1897. It is provided by this statute that every railroad corporation shall be liable for damages for personal injuries suffered by any employe while in its service, the employe being in the exercise of due care and diligence, in the following cases: "(2.) Where such injury resulted from the negligence of any person in the service of such corporation, to whose order

or direction the injured employe at the time of the injury was bound to conform, and did conform." This section of the act must be held to apply only to cases where the employe is acting under the special order or direction of one to whose orders and directions at the time of the injury he is bound to conform and is conforming. It could mean nothing more. In performing the ordinary duties of his position the brakeman can not be held to be, within the meaning of the statute, acting under the special order or direction of the conductor. The statute of Alabama in this particular regard is the same as ours. In the case of *Mobile, etc., R. Co.* v. *George,* 94 Ala. 199, that court said: "To entitle plaintiff to recover by virtue of the statute, he must both aver and prove a case coming within one of the enumerated classes of cases. Under the nineteenth and twenty-first counts, it is incumbent upon plaintiff to show (1) that the person who gave the orders or directions was in the service or employment of defendant; (2) that he was bound to conform to the orders of such person; (3) that he did conform to such orders, and that his injuries resulted from having so conformed, and (4) that the person was negligent in giving the orders or directions. The clause under which these counts are framed evidently refers to *special* orders or directions, in respect to the particular service in which the employe is engaged at the time of the injury, as distinguished from a general order or direction in reference to the discharge of his general service, growing out of the nature and scope of his employment. * * * There being no evidence that the yard-master gave plaintiff any order or direction to uncouple the car from the engine at the time of his injury, he has failed to establish one of the essential statutory propositions and is not entitled to recover under the twenty-first count."

In the case of *Evans* v. *Railway Co.,* 70 Miss. 527, the injured brakeman relied upon §3559 Ann. Code Miss. 1892, which was as follows: "Every employe of a railroad corpo-

ration shall have the same rights and remedies for an injury suffered by him from the act or omission of the corporation or its employes as are allowed by law to other persons not employes, when the injury results from the negligence of a superior agent or officer, or of a person having the right to control or direct the services of the party injured." Campbell, C. J., in deciding the case, said: "The constitutional provision has reference to a superior agent or officer, of the sort well known as such, and any other person in the company's service, by whatever name, who may be entrusted with the right to control and direct the services of others, according to his discretion and judgment—one to whom is committed the direction or control of others, for the accomplishment of some end dependent on his independent orders, born of the occasion, sprung from him as director, and not consisting of mere execution of routine duties in pursuance of fixed rules by various employes, each charged with certain parts in the general performance. It may be that under some circumstances the engineer may be the superior of the brakeman, in the meaning of the constitution, but in the operation of the train, in accordance with rules, one is no more superior than the other, and they are not within the rule established by the constitution." To the same effect see *Fenwick* v. *Illinois, etc., R. Co.,* 100 Fed. 247.

Now let us see what the facts applicable to this phase of the case were, as found by the jury. "Was he [appellee], before riding down on said cars, at or near the point where said track connects with the said passing track, together with the conductor and the two other brakemen of said train? A. Yes. Did the conductor of said train, at that time, say anything to said brakeman in relation to getting the train out? A. Yes. If you answer the above question 'yes,' state just what he said. A. 'Let us hurry up boys and get out of here.' If he said anything to said brakeman, was it addressed to any one of them or to all of them? A. To all. Did anything that he said to said brakemen have anything

to do with the plaintiff's injury? A. No. If you answer the above question 'yes,' state what and how it had anything to do with his injury. A. . Nothing. Was the plaintiff, at the time, in a hurry to get the train out and return to his home in Fort Wayne. A. Yes. Did the plaintiff ride said two cars south on the spur or freight house track before all of the switching was completed? A. Yes. When said switching was completed, and the locomotive pulled out onto the passing track, were the couplings to be made between it and the said street south of the depot? A. Yes. Did the brakeman Southern make some of the couplings near the locomotive? A. Yes. Did the brakeman Murphy couple said cars at the depot to the train backed down to them. A. Yes. Was it the duty of the plaintiff, as rear brakeman, on said train, to couple the cars at the street south of the depot? A. Yes. Had the plaintiff, at many times prior to the 24th of August, made the coupling of cars at said street crossing? A. Yes. Was it his duty to make said coupling without being told by any one to do so? A. Yes. On the 24th of August, did any one direct the plaintiff to go in and make the particular coupling at said street crossing? A. No. After the plaintiff went to the north end of the cars so cut off, did he give a signal for said train to be moved south? A. Yes. Was said signal given after Murphy had made his coupling at the depot? A. Yes. Was that signal communicated from him to the brakeman Murphy, and from him to the brakeman Southern, and from him to the engineer? A. Yes. After the giving of said signal did said train start to back south? A. Train was in motion. About the time the plaintiff went between said cars to make the coupling was the brakeman Murphy stationed at some point near the depot building, and the brakeman Southern north of him to communicate to the engineer? A. Yes. After the coupling had been made at the depot, and the engineer had received a signal to move the train south, did he receive from the brakeman Southern a signal to move faster? A.

Yes. Did he, at about the same time, receive a signal from the conductor to move faster? A. Yes. Did the conductor repeat to the engineer the signal which he saw the brakeman Murphy give to the brakeman Southern? A. Yes. Did the signal from Southern and the conductor indicate about the same speed? A. Yes. Did said Southern receive from said Murphy, after the first signal, a signal to move faster? A. Yes. Had said Murphy received a signal to move faster from the plaintiff? A. No. In obeying that signal, and in moving his train to make the coupling at the street crossing, did the engineer act with ordinary and reasonable care? A. Yes."

It is thus specifically found that it was the duty of the appellee to make the coupling at the place where he was injured, without any orders from any one; that no special orders were given by the conductor in relation to the particular work to be done; that the only thing said by the conductor was: "Let us hurry up boys and get out of here"; that nothing said by the conductor had anything to do with appellee's injury. It is clear from the facts found that appellee has failed to bring himself within the meaning of the second subdivision of §5206s Horner 1897. Such being the case, appellee cannot recover, because the negligence, if any, of the conductor was the negligence of a fellow servant. *New York, etc., R. Co. v. Perriguey,* 138 Ind. 414; *Louisville, etc., R. Co. v. Southwick,* 16 Ind. App. 486; *Kerlin v. Chicago, etc., R. Co.,* 50 Fed. 185.

What we have said is upon the theory that the general verdict of the jury, which necessarily finds the conductor guilty of negligence, was justified by the evidence. The evidence does not sustain such a finding, and the facts found by the answers to interrogatories show the contrary. It is shown by the answers to the interrogatories that on account of the fact that appellee could not see the engineer when he went to make the coupling, the train being upon a curve, Murphy, another brakeman, was stationed near the depot,

and Southern, another brakeman, was stationed near the locomotive for the purpose of communicating appellee's signals to the engineer.   Appellee signaled Murphy to back the train, which signal Murphy conveyed through Southern to the engineer; afterward Murphy signaled Southern to move the train faster, and the conductor, who was near the locomotive, conveyed the signal received from Murphy by Southern to the engineer.   The conductor had a right to assume that the brakemen were giving the correct signal.   In any event, his action in repeating the signal did not affect the action of the engineer, as the engineer had received the same signal from Southern.   If the injury was caused by the moving of the train, the negligence, if any, was the negligence of Murphy, a fellow servant with appellee.   The jury find that the signal to move faster was started by Murphy, who stood near appellee, but was not given by appellee to Murphy.

The facts found by the answers to the interrogatories preclude a recovery upon any theory which appellee might advance under the allegations of his complaint.

Judgment reversed, with instruction to the trial court to sustain appellant's motion for judgment upon the answers to interrogatories.