## CHICAGO, R. I. & P. RY. CO. v. STAHLEY.

(Circuit Court of Appeals. Eighth Circuit. June 25, 1894.)

No. 430.

1. FEDERAL COURTS — FOLLOWING DECISIONS OF STATE COURTS — STATUTE ADOPTED FROM ANOTHER STATE.

Where a statute of one state, after it has there received a settled construction, is adopted in another state, if the supreme court of that state construes the statute differently, such construction will be accepted by the federal courts as the true interpretation within that state.

2. MASTER AND SERVANT — INJURIES TO EMPLOYES OF RAILROAD COMPANIES — STATUTORY PROVISIONS.

Comp. Laws Kan. 1879, p. 784, § 4914, making a railroad company liable "for all damages done to any employee of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees," having been construed by the supreme court of the state as not limited to injuries caused in the movement of trains, is properly applied, in the federal courts, to a case where one employé was injured by negligence of another while both were engaged, in a roundhouse, in putting a recently-arrived engine in condition for immediate use.

3. TRIAL — PROVINCE OF COURT AND JURY — EXPRESSION OF OPINION ON FACTS.

The simple expression of a personal opinion by a judge of a United States court, in charging the jury, that a certain act was, under the circumstances, negligence, is not ground for reversal, where the portion of the charge immediately preceding left to the jury the question of negligence in such act.

In Error to the Circuit Court of the United States for the District of Kansas.

This was an action by E. S. Stahley against the Chicago, Rock Island & Pacific Railway Company for personal injuries. On trial in the circuit court the jury found a verdict for plaintiff, and judgment for plaintiff was entered thereon. Defendant brought error.

The facts in this case are, briefly stated, as follows: Plaintiff below (defendant in error) was in the employ of the railway company at Horton, Kan. At the time of the accident he was working in the roundhouse, which was situated near to the tracks, and contained stalls for 20 locomotives. A new locomotive had recently been brought from a manufactory in the east, and he, with three other employés of the railway company (one of whom was named Dougherty), was engaged in putting it in order for use; it being at the time of its arrival what is called a "dead" engine,—that is, an engine capable of being moved on the tracks, but with some of the machinery and rods as yet not attached. The four, while thus employed, attempted to lift a driving rod, and attach it to the engine. This driving rod was about eight feet long, and weighing, according to the plaintiff's witnesses, from 700 to 800 pounds, and, according to the defendant's testimony, from 400 to 433 pounds. Two took hold of the rod at one end, and two at the other, and, while carrying it to its place, Dougherty and his associate, at one end, without notice or warning to the others, let go their hold; and the sudden jerk caused by the dropping of that end on the ground resulted in injury to the plaintiff, who was one of the two holding the rod at the other end. To recover for such injury, plaintiff brought this action against the railway company. The verdict and judgment were in favor of the plaintiff, and the defendant sued out this writ of error.

There was at the time in force in the state of Kansas a statute as follows: "Every railroad company organized or doing business in this state shall be liable for all damages done to any employee of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees, to any person sustaining such damage." Comp. Laws

1879, p. 784, § 4914. At the trial, the fact of the injury having been proved, the court was asked to charge that the plaintiff could not claim the benefit of this statute because it embraced "within its meaning only those persons engaged·in the hazardous business of operating a railroad," and the refusal to give this instruction is the principal matter complained of.

The other error alleged is in giving this instruction: "At this point is where, I think, the stress of the case comes, to determine in the first place whether Dougherty and his associate dropped the·rod in the manner claimed by the plaintiff, without any warning whatever to plaintiff; and, second, whether or not the plaintiff was at the time im the exercise of ordinary care, that is, such as a man under such circumstances would ordinarily exercise. If you find these two propositions in the affirmative, the plaintiff would be entitled to recover in this case such damages as you can say, from the whole evidence, is fair and proper compensation for the injuries suffered."

W. F. Evans (M. A. Low and J. E. Dolman, on the brief), for plaintiff in error.

A. F. Martin, for defendant in error.

Before BREWER, Circuit Justice, and CALDWELL and SANBORN, Circuit Judges.

BREWER, Circuit Justice·(after stating the facts). The Kansas statute was taken from the legislation of the state of Iowa, and it is insisted by counsel for the railway company that Kansas, in adopting the Iowa statute, adopted it with the limitations and construction theretofore placed thereon by the supreme court of Iowa, and that, therefore, in order to determine its meaning and scope, we must look to the decisions of that court.

It is undoubtedly true that, when one state adopts the statute of another, it is presumed to take it with the settled construction given to it in the state from which it is taken. That proposition has been often recognized by the supreme court of the United States. Thus, in McDonald v. Hovey, 110 U. S. 619–628, 4 Sup. Ct. 142, that court, by Mr. Justice Bradley, said:

"It is a received canon of construction, acquiesced in by this court, 'that, where English statutes—such, for instance, as the statute of frauds and the statute of limitations—have been adopted into our own legislation, the known and settled construction of those statutes by courts of law has been considered as silently incorporated into the acts, or has been .received with all the weight of authority.' Pennock v. Dialogue, 2 Pet. 1, 18; Smith, St. & Const. Law, § 634; Sedg. St. & Const. Law, 363."

And again, in Interstate Commerce Commission v. Baltimore & O. R. Co., 145 U. S. 263, 284, 12 Sup. Ct. 844 it was said by Mr. Justice Brown:

"But, so far as relates to the question of 'undue preference,' it may be presumed that congress, in adopting the language of the English act, had in mind the constructions given to these words by the English courts. and intended to incorporate them into the statute."

Indeed, in construing this very statute, the supreme court of Kansas, in Railway Co. v. Haley, 25 Kan. 35, 53, said:

"We concur in the views expressed by the Iowa court as to the constitutionality of the statute, and hold it a valid exercise of legislative power. As our state has adopted the statute from Iowa, the judicial construction given to it in that state follows it to this state. Bemis v. Becker, 1 Kan. 226. Therefore, the act embraces only those persons more or less exposed to the hazards of the business of railroading."

See, also, Trust Co. v. Thomason, 25 Kan. 1.

But, while this is an undoubted rule of construction, there is another which is more applicable to the present case; and that is that, when a right is given or a liability imposed by a statute of a state, the settled determination by the courts of that state as to its scope and meaning is controlling upon the federal courts. We follow the state courts in their construction of state statutes of this nature. Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10; Claiborne Co. v. Brooks, 111 U. S. 400, 4 Sup. Ct. 489; Bucher v. Railroad Co., 125 U. S. 555, 8 Sup. Ct. 974; Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012. This rule is paramount to the one heretofore referred to. Applying it to the case at bar, if the supreme court of Kansas, although the statute had been adopted from the state of Iowa after it had there received a settled construction, should construe it differently, the federal courts would accept the construction placed by the supreme court of Kansas as the true interpretation of the statute within the limits of that state. Or, to state the proposition in another way, if a precisely similar statute was enacted in two adjoining states, and yet, notwithstanding such similarity, the settled course of decision in those states resulted in a different interpretation of the same language, the federal courts would accept the construction given by the courts of each state, respectively, as the true meaning of the statute in such state.

Following this established rule of federal decision, there is no difficulty in respect to the first of these questions. The circuit court properly refused the instruction in respect to the nonapplicability of the statute. The terms of the statute are general. The liability is imposed upon a railroad company "for all damages done to any employee of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees." The letter of the statute is broad enough to include every employé of a railroad company, no matter what the character of his service, or that of the other employé by whose negligence he is injured. While this literal construction of the statute is not that placed upon its language by the supreme court of Kansas, that court has held that the liability is not limited to those cases in which the injury is caused in the movement of railroad trains. The cases of Railway Co. v. Harris, 33 Kan. 416, 6 Pac. 571, and Railroad Co. v. Koehler, 37 Kan. 463, 15 Pac. 567, show to what extent that court carries the terms of this statute. In the first of these cases, Harris was a section hand employed in repairing the track of the railroad company,—taking out old rails and putting in new ones. While so doing, he was injured by the negligence of another employé engaged in like service. It will be seen that this injury in no way resulted from the actual movement of trains, but occurred while the party injured and the negligent coemployé were engaged in the work of putting the track in condition for use; and the court, on page 421, 33 Kan., and page 571, 6 Pac., uses this language:

"In the case before us, at the time of the injury complained of, plaintiff below was in the employ of the railway company, and was actually engaged in the business of the company, upon its roadbed and tracks, in the work

of replacing old rails of the track with new ones; and, while assisting in removing a rail from a push car upon the track, he was injured, without fault on his part, by the negligence of his coemployés. With our construction of the statute, there is nothing in the petition or findings of fact to prevent his recovery."

In the second of these cases the deceased, an employé of the company, was engaged with others in transferring rails from a pile alongside the track onto a car, and while so doing was killed through the negligence of one engaged in like service, and the company was held liable, within the terms of this statute; the court, on page 469, 37 Kan., and page 567, 15 Pac., saying:

"The service was actually performed on the company's road, was necessary to its use and operation, and the result in the case sufficiently shows the hazardous character of the service."

It is difficult to distinguish those cases from the present. Here, as there, the injury did not result from the movement of the trains, but occurred while the employé injured and the employé injuring were engaged in work not remotely, but directly, connected with the operation of the road. Putting a track in condition is no more directly connected with the movement of trains than putting an engine in condition. It will be noticed that this plaintiff was not at work in a machine shop, or in any other place not actually and necessarily used in the daily work of operating the railroad, but in a roundhouse, which is only a building in which engines are housed and prepared for use. A roundhouse is as much a necessity for railroading as a stable for the livery business. He was not engaged in repairing an old engine or constructing a new one, but in putting that engine which had recently arrived in condition for immediate use. He was, as in those cases, not engaged in any outside work remotely related to the business of the company; he was not cutting ties on some distant tract to be used by the company in preparing its roadbed, nor in mining coal for consumption by the engines, nor even in the machine shops of the company, constructing or repairing its rolling stock; but the work which he was doing was work directly related to the movement of trains,—as much so as that of repairing the track. We are unable to distinguish this case, in principle, from the two referred to in the decisions of the supreme court of Kansas; and therefore, as this is a case arising in that state, we must hold that the circuit court did not err in ruling that the plaintiff was entitled to the benefit of this statute.

The other instruction complained of is challenged on the ground that thereby the court took from the jury the question as to whether Dougherty and his associate were guilty of negligence in dropping the rod as they did. This instruction should be read with that portion of the charge immediately preceding, which is as follows:

"If, on examining the testimony, you are satisfied from the evidence that Dougherty and his associate, whoever he was—there seems to be some doubt as to who he was—threw this rod down, and without any warning whatever, in the manner stated by plaintiff and Mr. Norton, my own view is he was not using that due care and caution which a prudent man would ordinarily exercise under like circumstances, and which in this case he was bound to exercise. If you find that to be true, then I think you would be

warranted in saying he was guilty of negligence, and that the plaintiff, in that event, would be entitled to recover. * * * It seems to me that, if he had hold of the rod in the manner he states,—the manner that Dougherty states he had hold of the rod,—if he had been notified, as 1 think he had the right to be, before the other end was dropped upon the floor, he might perhaps have released his hold in a way that would not have brought upon him the injury complained of in the case; but upon this whole matter I simply call your attention to the evidence and testimony, and submit the matter for your consideration. Upon this proposition you have the right to entertain views contrary to those entertained by the court, as to the effect of this evidence."

We think a fair inference from this language is that the judge left to the jury the right to pass upon the question as to the negligence of Dougherty and his associate, simply expressing a personal opinion that the dropping of the rod by them without any warning was, under the circumstances, negligence. Such an expression of opinion is permitted in the courts of the United States. Starr v. U. S., 153 U. S. 614, 14 Sup. Ct. 919. With that opinion we fully concur. It seems to us that there can be little doubt that if four men take hold of a rod of great weight, for the purpose of carrying and putting it in position, it is exceedingly careless for those at one end to let go their hold, and drop their end to the ground, without giving warning to those who hold at the other end, for thereby they necessarily subject them to a sudden strain and jerk.

These are the only questions presented in the record. The one seems settled by the decisions of the supreme court of Kansas, and in respect to the other, as a matter of general law, we entertain little doubt. The judgment of the circuit court is therefore affirmed.