## INDIANAPOLIS STREET RAILWAY COMPANY v. KANE.

[No. 20,641.   Filed April 3, 1907.   Rehearing denied June 28, 1907.]

1.  APPEAL.—*Assignment of Errors.—General.—Change of Venue.— Failure to Specify What Court Committed Error.*—Where the assignment of errors fails to specify the particular trial court which committed the alleged error, the fact that such error was not committed by the court from which the appeal was taken, but was committed by another court prior to a change of venue, such assignment properly presents the question. *Chicago, etc., R. Co.* v. *Walton,* 165 Ind. 642, and *Smith* v. *Smith,* 106 Ind. 43, distinguished. p. 29.

2. MASTER AND SERVANT.—*Negligence.—Fellow Servants.—Common Law.*—At the common law a foreman was ordinarily a fellow servant with other workmen when performing the ordinary duties of his employment, in all matters not involving duties of the master, even though he was expressly authorized to give orders. p. 30.

3. SAME.—*Employers' Liability Act.—Directing Servant.*—A master who authorizes a servant to direct the work of other servants who are bound to obey, and who, while conforming to the orders of such servant and exercising due care, are injured by reason of such servant's negligent act or omission, is liable. p. 31.

4. PLEADING.—*Complaint.—Employers' Liability Act.—Negligence.—Street Railroads.*—A complaint showing that a street railroad company sent a number of employes to repair a broken bridge; that one was authorized to direct and the others to obey; that he negligently caused a prop to be placed under some heavy materials and ordered plaintiff to remove some debris near by; that such prop fell, causing such materials to fall upon plaintiff, causing him injury, states a cause of action under section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901), p. 32.

5. MASTER AND SERVANT.—*Fellow Servants.—Employers' Liability Act.*—The fellow-servant doctrines do not affect a cause of action brought under section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901) by a servant for injuries received because of a directing servant's negligent orders to which he was bound to conform, and while conforming thereto was injured. p. 33.

6. SAME.—*Employers' Liability Act.—Orders.—Special.*—Section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901) providing that masters shall be liable for injuries received by a servant in obeying negligent orders from his superior, imports that such orders shall be special as distinguished from general orders. p. 33.

7. SAME.—*Employers' Liability Act.—Orders.—Special.*—A superior servant's order for the plaintiff to remove debris from a place near a prop which supported heavy materials in a broken bridge is within section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901), rendering the master liable for negligence in the orders of such servant. p. 34.

8. SAME.—*Negligence.—Common Law.—Employers' Liability Act.*—The contentions that section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901) does not create a new kind of negligence, and that as a test for such negligence resort must be had to the common law, cannot be sustained. p. 34.

9. NEGLIGENCE.—*When Actionable.—Master and Servant.—Employers' Liability Act.*—Actionable negligence imports the nonperformance of a duty to the injured party, and the negligence of a

Indianapolis St. R. Co. *v.* Kane—169 Ind. 25.

superior servant is imputed to the master by section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901). p. 35.

10. MASTER AND SERVANT.—*Assumed Risk.*—*Employers' Liability Act.*—The doctrine of assumed risk does not apply to the negligence of a superior servant who has authority to issue orders and require obedience thereto, as contemplated by section one of the employers' liability act (Acts 1893, p, 294, §7083 Burns 1901). p. 35.

11. TRIAL.—*Instructions.*—*Peremptory.*—A peremptory instruction for defendant should not be given, where there is some evidence to sustain the material allegations of the complaint. p. 36.

12. SAME.—*Interrogatories to Jury.*—*General Verdict.*—*Which Controls.*—The answers to the interrogatories to the jury control the general verdict only when they cannot be reconciled therewith on any possible hypothesis. p. 36.

13. SAME.—*Interrogatories to Jury.*—*"General Order."*—*Employers' Liability Act.*—An answer to an interrogatory to the jury, in an action for negligence under section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901), that plaintiff was engaged at the time of the injury under a "general order" to all of the men "to go ahead and clear a place for the other prop," does not control a general verdict for plaintiff. p. 37.

14. SAME.—*Damages.*—*Remittitur.*—Trial courts have the right to require the plaintiff to remit a part of the damages assessed by the verdict; and such action is favorably considered by the courts. p. 37.

15. DAMAGES.—*Excessive.*—A judgment for $10,000 is not excessive where the injured person was 35 years old and the injury required a removal of a part of the skull, with a consequent impairment of his sight and hearing and permanently disabled him from pursuing his vocation. p. 37.

16. TRIAL.—*Instructions.*—*Employers' Liability Act.*—*Assumption of Risk.*—An instruction, in an action under section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901) that when a person hires to do railroad track repair work, such person assumes all the ordinary risks thereof and "he cannot rely wholly upon his employer to make the working place safe," is not erroneous. p. 38.

17. SAME.—*Instructions.*—*Employers' Liability Act.*—*Safe Place.*—An instruction, in an action under section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901), that a servant employed to make a dangerous place safe usually assumes the ordinary risks incident thereto, but if the superior servant negligently orders the servant to do a particular work and he is injured thereby, the master is liable, is correct. p. 39.

18. APPEAL.—*Weighing Evidence.*—The Supreme Court will not weigh conflicting oral evidence. p. 39,

19. APPEAL.—*Rehearing.*—*Questions Presentable.*—Questions not presented at the original hearing cannot be considered on a petition for a rehearing, all such questions being waived. p. 40.

From Hancock Circuit Court; *Edward W. Felt,* Judge.

Action by Luke Kane against the Indianapolis Street Railway Company. From a judgment on a *remittitur* of $5,000 from a verdict for $15,000, defendant appeals. Appealed from Appellate Court under §1337j Burns 1901, subdv. 3, Acts 1901, p. 565, §10. *Affirmed.*

*F. Winter, W. H. Latta* and *Marsh & Cook,* for appellant.
*Elliott, Elliott & Littleton* and *Wymond J. Beckett,* for appellee.

HADLEY, J.—May 11, 1899, the Central avenue bridge over Fall creek, in the city of Indianapolis, broke and fell while the gravel-train of appellant was passing over it. Defendant's roadmaster, who was duly authorized by the defendant, ordered trackmen, among them the appellee, to the bridge to make repairs. Arriving at the bridge late in the afternoon, it was found that of the two tracks over the bridge the east one was suspended from pier to pier, holding with it that part of the bridge that was fastened to the ties. Footmen were passing over the suspended structure, but, being manifestly dangerous, it was decided to put a prop or pillar under each rail, midway between the piers, to relieve, temporarily, the danger to passing footmen. Two heavy timbers were brought, a footing prepared, and one piece raised to an upright position and forced into place under the west rail, all under the direct supervision of the defendant's roadmaster. The latter, when the first timber was placed, ordered the plaintiff to clear a place for a like prop under the east rail. While engaged in obeying the order the timber that had just been set fell, and inflicted upon appellee the injuries for which he sues. The action was brought in the Marion Superior Court against the Citizens Street Railroad Company, and the Indianapolis

Street Railway Company. Each of the defendants separately demurred to the complaint for insufficiency of facts, both of which were overruled, and several exceptions reserved. Each of the defendants then filed a separate answer of general denial. Subsequently the action was dismissed as to the Citizens Street Railroad Company, leaving the Indianapolis Street Railway Company the sole defendant. At this stage of the proceedings the venue was changed to the Hancock Circuit Court, where the case was tried and a verdict and judgment rendered in favor of plaintiff, from which this appeal is prosecuted.

The errors assigned in this court are: (1) "Overruling the demurrer to the complaint;" (2) overruling the motion for a new trial; (3) overruling defendant's motion for judgment on answers to interrogatories.

Appellee insists that the first assignment presents no question as to sufficiency of the complaint, his point being that since the record shows that the appeal is from the judgment of the Hancock Circuit Court, unless so specified in the assignment of errors, this court cannot take cognizance of exceptions to the decisions appearing to have been made by the Marion Superior Court. A similar question was before the court in *McKeen* v. *Porter* (1893), 134 Ind. 483, and it was there ruled that a general assignment—that is, an assignment that does not specify the court by which the ruling was made, as in this case—will be held sufficient when the record clearly shows the ruling and the court by which it was made. We are satisfied with the former ruling and adhere to it in this case. The cases of *Chicago, etc., R. Co.* v. *Walton* (1905), 165 Ind. 642; *Smith* v. *Smith* (1886), 106 Ind. 43, and others of their class are not authority upon the question, as these cases plainly rest upon the fact that the assignments of errors charged the ruling complained of to a particular court, and the record showed that the court named had made no such ruling.

The complaint rests upon the second subdivision of section one of the employers' liability act (§7083 Burns 1901, Acts 1893, p. 294), which reads as follows: "That every railroad or other corporation, except municipal, operating in this State, shall be liable for damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases: * * * Where such injury resulted from the negligence of any person in the service of such corporation, to whose order or direction the injured employe at the time of the injury was bound to conform, and did conform." It is urged against the complaint that it affirmatively shows that the act complained of as negligent was the act of a fellow servant. The act referred to is that of the roadmaster, who, as charged, knowing the prop that had just been raised under the bridge was unfastened and liable to fall, ordered the plaintiff, who was ignorant of the unfastened and dangerous condition of the prop, to proceed with the preparation of the foundation and footing for a like prop under the other rail.

In view of the allegations of the complaint, appellant's argument might be sound if we were dealing with the rules of the common law, for it must be conceded that under 2. the old law the roadmaster or foreman and trackmen working with him, as a general rule, while engaged together in performing the ordinary duties of their employment, are fellow servants and subject to co-servant principles. *Hodges* v. *Standard Wheel Co.* (1899), 152 Ind. 680; *City of Ft. Wayne* v. *Ft. Wayne, etc., R. Co.* (1897), 149 Ind. 25; and this would be true even though it should be shown that the foreman was expressly authorized by the master to give orders and directions to those working with him, with respect to the performance of their duties, in all matters not involving duties of the master. *New Pittsburgh Coal, etc., Co.* v. *Peterson* (1894), 136 Ind. 398, 43 Am. St. 327; *Dill* v. *Marmon* (1905), 164 Ind. 507, 69 L. R. A. 163.

But the question we have before us is whether the facts alleged bring the case within the meaning of the second subdivision of §7083, *supra.* Appellee makes no claim that his complaint is good at common law, and admits that it must be good under the statute, or he has no case. The provision of the statute relied upon imposes upon railroad corporations liability in certain cases that is distinctly in derogation of the common law. *Louisville, etc., R. Co.* v. *Wagner* (1899), 153 Ind. 420. The essence of the statute is that when the master installs one of his servants as the superior of others, with power to direct and supervise the latter in the performance of their duties in the master's service, and with the power to exact obedience, such superior, while exercising the power of command, and ordering workmen into places where they might not voluntarily go, or when ordering them to perform a work in a particular place or in a particular manner, in accordance with his arbitrary commands, in giving such working orders to his fellows, stands in the shoes of the master, and if the obeying servant, while engaged in executing the orders of such superior, himself in the observance of due care and diligence, becomes injured by any negligent act or omission of the former, then the master is liable. As expressed by this court in *Louisville, etc., R. Co.* v. *Wagner, supra,* the test of liability under the second subdivision of the statute is threefold: "(1) Was the offending servant clothed by the employer with authority to give orders to the injured servant that the latter was bound to obey? (2) Did the injury result to the latter from the negligence of the former while conforming to an order of the former that the injured servant was, at the time, bound to obey? (3) Was the injured party at the time of the injury in the exercise of due care and diligence?"

Generally, on the construction of the second subdivision of said section, see *Thacker* v. *Chicago, etc., R. Co.* (1902), 159 Ind. 82, 59 L. R. A. 792; *American Rolling Mill Co.* v.

*Hullinger* (1904), 161 Ind. 673; *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85, 102 Am. St. 185; *Republic Iron & Steel Co.* v. *Berkes* (1904), 162 Ind. 517.

The complaint alleges that the plaintiff was a trackman in defendant's employ, and on the day of the accident he, with the other trackmen, was ordered by the defendant's roadmaster to the broken Fall creek bridge to make temporary repairs. At the time the roadmaster had full authority from the defendant to order said trackmen, including the plaintiff, where to work, and what work each should do at any place along the defendant's road; and the plaintiff was under the authority of the roadmaster, and was bound to conform to the orders and instructions issued by him concerning, and in furtherance of, the repairs and maintenance of the defendant's railroad and tracks. The other trackmen of the defendant having erected a heavy oak prop, ten by twelve inches by sixteen feet long, under the west rail of the defendant's track midway between the north and south piers of the bridge, said roadmaster thereupon ordered the plaintiff, in accordance with his authority from the defendant, to clear away the debris and prepare a footing, at a designated spot, for a like prop under the east rail of said track, to which order the plaintiff was bound to conform. While plaintiff was engaged in obeying and conforming to said order, and in doing said work at the place and in the manner required by said order, and while in the exercise of due care and diligence, by reason of the negligence of the roadmaster in failing to nail or in any way to fasten the top of said prop to the timbers under which it rested, and in failing to make such prop fast and secure from falling, and in failing to observe due care and caution to prevent the prop from falling and injuring the plaintiff while engaged in conforming to said orders, said prop slipped out from under said bridge timbers, and with great weight and violence fell upon the plaintiff, inflicting upon him serious and permanent injuries, all without his

fault or negligence. The roadmaster, when he gave the plaintiff said order, knew, or by the exercise of due care could have known, that said prop was loose and likely to fall and injure the plaintiff unless secured in some way, and that it was dangerous to the plaintiff. It was dark and the plaintiff could not see that the prop was loose and unfastened, and likely to fall and injure him, and did not know that said prop, in its then condition, was dangerous.

The first criticism of the complaint is that it affirmatively shows that the act complained of as being negligent was the act of a fellow servant. The fellow servant rule is

5. not applicable to this case. As we have seen, it is founded upon the second subdivision of section one of the employers' liability act (§7083 Burns 1901, Acts 1893, p. 294), and unless good under this statute is conceded to be bad. The test is: Does the complaint sufficiently show that the plaintiff was injured because of the negligence of a person in the defendant's service to whose order and direction he was at the time of the injury bound to conform and was conforming? The complaint very clearly avers the roadmaster's authority from the railroad company to give orders to the plaintiff, the duty of the plaintiff to obey, the giving of the order, and, while plaintiff was conforming thereto, his injury from the negligence of the roadmaster. This, under the statute, is enough to show liability in appellant without reference to whether the roadmaster and appellee were, at the time, fellow servants.

It is also contended that the "order and direction" stated in the statute means a special, and not a general, order, and

6. that the complaint shows the order given to appellee to have been general and not special, and is therefore bad. We incline to the view that the statute should be held to refer to special orders, and not the general orders usually given employes concerning the general duties of their employment, and which ordinarily imply at least some degree of free will or choice in the selection of place, ways,

and means. It is fairly implied from the statute that the legislature intended that when one servant is entrusted by the master with the power to command and require obedience of his fellow servants, and such servant, in the exercise of the power, sends his fellow servant into a particular place, or requires him to do a thing in a particular manner, or by the use of particular means, without discretion or volition, and while the latter, with due care and diligence, is conforming to the order, the former, by his negligence, causes the latter to be injured, the master shall be liable. It is obvious that the legislature did not intend to make railroad corporations answerable for all injuries resulting to employes from the negligence of a foreman or boss who at common law is a co-servant, while the parties are engaged together in performing the ordinary and common duties of their employment. In other words, the protection of the statute does not extend to an employe who is injured from the negligence of his foreman while working under general directions. Such a holding would be equivalent to making a railroad company the absolute insurer of the safety of its employes against all manner of negligence of a superior who has authority to order and direct. We think, therefore, the order should be held to refer to some specific, in contradistinction to general, duty, which the offending servant has authority to impose. *Grand Rapids, etc., R. Co.* v. *Pettit* (1901), 27 Ind. App. 120, 124; *Snowden* v. *Baynes* (1890), 24 Q. B. D. 568.

But we cannot agree with the appellant that the order as described in the complaint is a general order. It was to commence at once the doing of a particular thing, at a particular place, and for a particular purpose, and in all essential respects was a special order.

We do not agree with appellant that the employers' liability act does not create any new kind of negligence, and that for a test of any question of negligence arising thereunder we must resort to the common law.

We furthermore agree with appellant that there can be no actionable negligence except such as is rooted in the non-performance of a duty owing to the injured party. Black, Law and Pr. in Accident Cas., §150. But under the statute the superior servant, who, in respect of the matter, stands in the place of the master, is in duty bound to avoid injuring the obeying servant, or permitting him to become injured by the negligence of such superior servant, while the obeying servant, exercising due care and diligence, is engaged in conforming to such superior's order. The complaint alleges that the roadmaster gave the order, and while it was being obeyed by the plaintiff he was injured by the negligence of the former. In this respect the complaint must be held sufficient.

It is further contended that the complaint is fatally defective for failure to allege that the plaintiff did not assume the risk. There is no ground for controversy upon this point. Under our decisions it is necessary to a good complaint, in all actions between master and servant under the common law, wherein it may be inferred that the risk was assumed, to allege facts of sufficient force to overcome the presumption. Even under the employers' liability act, to excuse the negation of the assumption of risk, the complaint should allege such a state of facts as will, at least, exhibit a mixed question of law and fact for the jury. So it may be said the risk from the possible negligence of co-servants, the risk from encountering a present, known, and appreciated danger, without a compelling exigency, even upon command of a superior, and the like, are not affected by the statute we are considering. But the doctrine of assumed risks does not apply to the negligence of that class of servants for whose acts the manifest purpose of the statute is to make the master liable, and consequently is not applicable in this case. *Pittsburgh, etc., R. Co.* v. *Nicholas* (1906), 165 Ind. 679; *American Rolling Mill Co.* v. *Hullinger* (1904), 161 Ind. 673, and cases cited; *Terre*

*Haute, etc., R. Co.* v. *Rittenhouse* (1902), 28 Ind. App. 633;
Reno, Employers' Liability (2d ed.), §§246, 249, 250. The
demurrer to the complaint was properly overruled.

Appellant next questions the refusal of the court to in-
struct the jury to return a verdict in its favor. With re-
spect to this contention, it is enough to say that there
was evidence in support of all the material averments
of the complaint, and the court did not therefore err
in refusing to direct the jury.

It is next insisted that the court erred in overruling ap-
pellant's motion for judgment on the answers to interroga-
tories notwithstanding the general verdict.

The contention is chiefly based on the following interrog-
atories and answers: "(4) As soon as the foreman fin-
ished driving the timber into position, did he say, 'It's all
right, boys, now clear a place for another prop?'
A.   Yes.   *   *   *   .
(20) At the time the prop fell, was the plaintiff engaged
in removing debris, under the general order of the foreman
to all of the men to go ahead and 'clear a place for the other
prop?'
A.   Yes." Other answers show that it was dark, and the
roadmaster, while directing the raising of the prop, stood
upon a platform above the head of the appellee, and four or
five feet distant, where he could see and sledge the prop into
position; that the appellee wholly relied upon the announce-
ment of the roadmaster that "it's all right;" that the prop
fell because it was not fastened at the top, or otherwise se-
cured.

The general verdict in favor of appellee presumptively
finds the existence of every fact essential to his recovery,
and to overthrow it the special findings must disclose
facts so inconsistent that they cannot be reconciled
therewith on any possible hypothesis. *Consolidated
Stone Co.* v. *Summit* (1899), 152 Ind. 297.

The principal argument in support of this question is that

the special finding is to the effect that when appellee was injured he was obeying a general, not a special, order 13. of the roadmaster. Because the order is called a general order does not make it a general order. The court had given the jury no direction as to the technical distinction between a general and a special order, the description of the order was in the interrogatory, not in the answer, and in a question like this, where all presumptions must be indulged in favor of the general verdict and against the answers to interrogatories, it will be presumed that its answer to interrogatory four, concerning the character of the order given the plaintiff by the roadmaster, should be understood according to the ordinary signification of the words. That order clearly implied the doing of a specific thing, at a specific place, for a specific purpose. Because the answers show that other persons were probably embraced in the order does not necessarily change a special into a general order. We do not find the answers complained of to be inconsistent with the general verdict, and the motion was rightly overruled.

It is claimed that the damages are excessive, and that the court erred in requiring and permitting a remittitur of a part of the damages assessed. The practice of re-14. quiring remittiturs is of ancient origin, and is recognized not only as a legitimate power, but is generally looked on by the courts with favor. *City of Goshen* v. *Alford* (1900), 154 Ind. 58; *Tucker* v. *Hiatt* (1898), 151 Ind. 332, 44 L. R. A. 129; *Cleveland, etc., R. Co.* v. *Beckett* (1895), 11 Ind. App. 547.

The judgment rendered was for $10,000. The evidence shows that appellee was thirty-five years old; that a considerable portion of his skull was removed; that his 15. sight and hearing were much impaired; that his nervous system was greatly injured, and he was permanently incapacitated from pursuing his vocation. We are convinced by the evidence that the sum assessed is not so

large as to warrant a suspicion that the jury were actuated in fixing the amount by prejudice, partiality, or corruption, and we see no sufficient reason for disturbing it. *Terre Haute, etc., R. Co.* v. *Sheeks* (1900), 155 Ind. 74, 100; *Illinois Cent. R. Co.* v. *Cheek* (1899), 152 Ind. 663.

The court gave to the jury an instruction to the following effect: The complaint alleged that the plaintiff was in the employ of the defendant, and when injured was working as a common laborer in and about the work of repairing and constructing the defendant's tracks; that, when a person hires himself to a railroad company to do repair work, such person assumes all the risks that are ordinarily incident to that kind of work, and he cannot rely wholly upon his employer to make the working place safe. The instruction as given was a modification by the court of number two, requested by appellant, by inserting the word "wholly" in the last clause, so as to make the instruction state that a servant employed to do repair work cannot rely wholly upon his employer to make the place safe. Appellant's insistence is that such a servant cannot rely upon his employer at all in this respect. We are unacquainted with any rule of negligence that puts track repairers in a class of their own. The general rule applicable to all departments of labor is well expressed by this court in *Lake Shore, etc., R. Co.* v. *McCormick* (1881), 74 Ind. 440, thus: "The servant, when he enters into the service of an employer, impliedly agrees that he will assume all risks which are ordinarily and naturally incident to the particular service; and the master or employer impliedly agrees that he will not subject his servant, through fraud, negligence, or malice, to greater risks than those which fairly and properly belong to the particular service in which the servant is to be engaged." It is the duty of a servant in any situation or class of employment to observe care, in proportion to the apparent or known dangers of the place, to preserve his own safety. But it is inaccurate to say, as re-

quested by appellant, that one employed to do repair work can, under no circumstances, find any measure of excuse for relying upon the master to keep the working place safe. The servant may certainly rely upon the master not negligently or maliciously to invest the working place with new, unusual, and unexpected dangers. The court did not err in its modification of appellant's request number two. Complaint is also made of a similar modification of appellant's request number nine, relating to the subject of contributory negligence, by the insertion of the word "wholly," and for reasons similar to those above expressed we hold the modification proper.

Further complaint is made of the giving of instruction seventeen and one-half. It informed the jury that ordinarily a person employed to make a dangerous place safe assumes all the risks which are ordinarily incident to that kind of work, but if the roadmaster under whom the plaintiff was working, and whose orders he was bound to obey, was guilty of the negligence charged in the complaint, the plaintiff could not be held to assume the risk, if any, caused by such negligence. What has already been said upon the subject of assumed risk will be accepted as sufficient approval of this instruction. Further complaints are made of the refusal of the court to give other instructions requested by the appellant, and of the giving of seven and eight of the series given, but the objections stated raise the same questions which we have discussed and decided adversely to the appellant in considering the sufficiency of the complaint, and we refrain from a repetition.

The evidence is somewhat conflicting, and of a character to deprive us of authority to weigh it. Whether the employers' liability act applies to or is valid as to street railroad corporations is not made a question in the case, and its application is virtually conceded.

We find no error.

## ON PETITION FOR REHEARING.

HADLEY, C. J.—Appellant has based a very earnest petition for a rehearing upon the fact that in the original case we failed to consider the constitutionality of §7083 19. Burns 1901, Acts 1893, p. 294, §1, as applied to street railroad corporations. The question was not decided because not presented. The complaint was founded upon the second clause of the statute just cited. Appellant filed a general demurrer thereto for insufficiency of facts, which was overruled, and exception reserved. The overruling of the demurrer to the complaint is assigned as error. To secure fairness, and to avoid confusion and delays in the disposition of causes, it is the policy of the law to require parties in appeals to present in their first brief all questions relied upon, and not to permit new questions to be subsequently raised. In pursuance of this policy, rule twenty-two of this court, which was in force at the time, and long before appellant's first brief was filed, provides as follows: "The brief of appellant shall contain * * * under a separate heading of each error relied on, separately numbered propositions or points, stated concisely, and without argument or elaboration, together with the authorities relied upon in support of them. * * * No alleged error or point, not contained in this statement of points, shall be raised afterwards, either by reply brief, or in oral or printed argument, or on petition for rehearing." In appellant's original brief, in this court, there is not in the statement of points and authorities, nor in the argument, nor in any other part of the brief, a statement or reference made, calling in question the constitutional validity of §7083, *supra,* as applied to street railroads, or other corporations.

It is argued by counsel that appellant's general demurrer to the complaint raised every objection to which the complaint was liable. It may be admitted that the demurrer was broad enough to support any and every objection that

went to the sufficiency of the facts, under the law, to exhibit a good cause of action against the defendant. But facts set up in a complaint, or other pleading, are often inadequate for more reasons than one, or supposed to be so. A demurrant is not bound to avail himself of, or present, all tenable objections. He may choose to rely on one or more and waive the others, and a party will be held to have waived those objections to which he fails to direct the court's attention. This court said in *In re Bank of Commerce* (1899), 153 Ind. 460, 474, 47 L. R. A. 489: "Counsel urge that the judgment is in conflict with several provisions of the Constitution of the United States. These questions were not presented, nor hinted at, in the briefs or oral argument on which the cause was submitted for decision. Counsel thereby waived the questions; and the waiver precludes any inquiry by this court into the soundness of their present contentions." See, also, to the same effect, *Armstrong* v. *Hufty* (1901), 156 Ind. 606, 630, and other cases cited; Elliott, App. Proc., §557. In the brief upon which appellant submitted this appeal five printed pages were occupied in the statement of numerous points in support of the demurrer to the complaint, but among them all there is not to be found an allusion or suggestion that the complaint is bad because founded upon an unconstitutional statute, or that §7083, *supra*, is obnoxious to the Constitution as applied to defendant corporation. In fact, if the word Constitution occurs between the covers of the brief, it has escaped our attention.

Appellant's counsel are in error in their statement that on March 1, 1907, and after appellant's first brief had been filed, this court announced a new interpretation, not only of the employers' liability act, but of the court's previous construction of it. The decision announced in *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, is in accord with every other opinion of this court relating to the employers' liability act. In effect, it was held in that decision that as to

all corporations, other than railroads, said act is unconstitutional, and this was the first decision upon this point by the court. The question had been presented in some previous cases, but never considered, for the reason that it had arisen in cases reversible for other reasons, and the court, guided by a well-established and familiar rule, left the constitutional question unconsidered. Counsel are equally in error in their assertion that we have frequently declared the constitutional validity of the statute, as applied to corporations other than railroads. In a number of cases judgments have been upheld; but it has been uniformly in causes in which the defense, as well as the prosecution, has been constructed on the statute, and the cause tried, as in this case, without anyone's calling in question the validity of the statute as applied to the defendant. There is nothing in any previous ruling of this court of controlling effect, for or against appellant's contention. In the case of *Bedford Quarries Co.* v. *Bough, supra,* it was held that the employers' liability act is valid as to railroads, and invalid as to other corporations. But, appellant being a street railroad company, the vital question with it is whether it belongs to the corporations classed in the statute as "railroads," or to those classed as "other corporations." This question has never been decided nor considered by the court, and counsel will hardly contend that it was presented in this case.

Petition overruled.