FERGUSON *v.* LAKE SHORE & MICHIGAN SOUTHERN RAIL-
WAY CO.

RAILROADS — MASTER AND SERVANT — NEGLIGENCE — STATUTES —
FELLOW-SERVANT.

> A mason's tender, employed by a railroad corporation to assist
> in constructing an addition to its roundhouse, working on a
> scaffold inside the uncompleted wall, was entitled to recover
> for injuries sustained because of the negligence of a fellow-
> servant in constructing a defective scaffolding: plaintiff was
> within the provisions of Act No. 104, Pub. Acts 1909, and did
> not come within the exception created by section seven of
> the act, providing that it should not apply to employés work-
> ing in shops or offices.

Error to Hillsdale; Chester, J. Submitted October 16,
1911. (Docket No. 31.) Decided March 29, 1912.

Case by Sharon Ferguson against the Lake Shore &
Michigan Southern Railway Company for personal injur-
ies. Judgment for plaintiff. Defendant brings error.
Affirmed.

*Herbert R. Clark,* for appellant.

*Fitzpatrick & Grommon,* for appellee.

MOORE, C. J. This is an action for damages for per-
sonal injuries, brought by the plaintiff against the defend-
ant in the circuit court for the county of Hillsdale. Plain-
tiff recovered a judgment for $738 and costs, and the case
is brought to this court by the defendant on a writ of
error.

The facts are not in dispute, but are contained in a
written stipulation, agreed upon by counsel, which reads
in part as follows:

"During the month of June, 1910, defendant was en-

gaged in the construction of an addition or extension to its roundhouse in the city of Hillsdale, Mich.   In the doing of this work, it employed certain carpenters and masons; plaintiff, a mason's tender, being one of the number.   *   *   *   The walls of the extension were being constructed of brick, and the north wall, extending easterly and westerly, had been completed to the height of the tops of the windows.   Just south of this wall, and inside of the addition that was being constructed, was a scaffold, seven or eight feet in height and about four feet wide, extending the entire length thereof.   *   *   *

"On June 21, 1910, in the afternoon, plaintiff and three other·men were carrying a window cap up onto the scaffold to be placed in position, had placed the window cap upon the higher scaffold from the lower scaffold, and were proceeding westerly with it on the higher scaffold, when one of the putlogs, because of a knot in it, broke, thereby precipitating plaintiff to the ground.   As he fell, the scaffold came down upon him, together with the brick, mortar board, and other materials on the scaffold, thereby causing the injuries complained of.   Plaintiff had nothing to do with the construction of the scaffold in question. It is conceded that the addition in question was being built on the north end of the roundhouse and extended the whole length of it, a distance of about 73 feet, and was to consist of three rooms, an office, an oilroom and supply room, and a machine shop, and that the window cap that was being carried at the time of the accident was to be placed over a window in what was to be the oilhouse, and that the accident happened in that part of the addition.   The roundhouse in question is located on the south side of the tracks, and about 40 or 50 rods west of the depot, and contains six stalls for the storage of engines, three of which stalls on the southwest corner had also been extended on the westerly side a distance of about 16 feet.

"It is conceded, for the purposes of this record, that plaintiff was injured in the manner complained of, and that the negligence was that of a fellow-servant in failing to select a suitable putlog to put into the scaffold.   It is conceded that there was no negligence on the part of plaintiff contributing to his injury.   It is also conceded, for the purpose of this record, that defendant furnished proper and suitable materials for the construction of the scaffold, and employed competent servants to construct it.

It is also conceded by the plaintiff that no recovery could be had in this case, except for Act No. 104, Pub. Acts 1909, doing away with the fellow-servant rule, which has been in force in this State, as to certain employés of railroads. Plaintiff claims the right to recover by reason of that act, and concedes that, in the absence of the act, he could not recover; while defendant claims that plaintiff was working in a 'shop,' within the meaning of the act, thus coming within the exception. The act was not pleaded by either party; but no advantage is sought to be taken of that fact by either. It is conceded that the verdict was not excessive for the injuries sustained. The facts being conceded, no error is assigned upon the rulings of the court as to the admission or rejection of evidence; the only assignment being made upon the refusal of the court to direct a verdict for the defendant, on the ground that the fellow-servant rule applied, and plaintiff was working in a 'shop,' within the meaning of the exception in Act No. 104, Pub. Acts 1909."

It will be observed that the one question for our consideration is whether the fellow-servant rule applies.

The provisions of Act No. 104, Pub. Acts 1909, material to this case, read as follows:

"SECTION 1. Every common carrier railroad company in this State shall be liable to any of its employés, or, in case of his death, to his personal representative for the benefit of his widow and children, if any; if none, then for his parents; if none, then for his next of kin, for all damages which may result from the negligence of any such railroad company or from the negligence of any of its officers, agents or employés, or by reason of any defect or insufficiency due to the negligence of any such common carrier railroad company in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, coal docks, or other equipment."

"SEC. 7. The provisions of this act shall not apply to employés working in shops or offices."

It is the claim of defendant that plaintiff comes within the provision of section 7; while plaintiff claims this section does not apply. The statute is comparatively new, and has not been construed by this court.

We have examined with care the cases cited by counsel.

No one of them construes a statute precisely like ours. The case nearest in point is that of *Louisville, etc., R. Co.* v. *Melton*, 218 U. S. 36 (30 Sup. Ct. 676). In the opinion filed in this case appears the following:

"The court below held that the Supreme Court of Indiana had construed the statute as applicable both to persons and corporations operating railroads. It further held that the statute embraced the case in hand, because Melton came within the category of persons injured in the operation of a railroad, as 'the construction of a coal tipple is * * * essential to the operation of a railroad.' As thus construed, the repugnancy of the statute to the equal protection clause of the Constitution of the United States was considered. It was decided that, for the purpose of abrogating or modifying the common-law doctrine of fellow-servant, it was competent for the lawmaking power of a State, without offending against the equal protection clause, to classify railroad employés because of the hazard attached to their vocation; and that a statute doing this need not be confined to employés who were engaged in and about the mere movement of trains, but could also validly include other employés doing work essential to be done to enable the carrying on of railroad operations. Thus, referring to the alleged distinction between railroad operatives engaged in train movement and those who were not, the court said:

"'We are unable to see the force of this distinction. A railroad cannot be run without bridges; bridges cannot be built without carpenters. The work of a bridge carpenter on a railroad is, perhaps, no less perilous than the work of an operative on one of its trains. Coal tipples are no less essential to the operation of a railroad than bridges, because the engines cannot be operated without coal. The construction of a coal tipple is therefore essential to the operating of a railroad. As has been well said, the legislature cannot well provide for all subjects in one act. Legislation must necessarily be done in detail, and an act regulating railroads violates no constitutional provision, because it is made to apply only to railroads. *Indianapolis, etc., R. Co.* v. *Kane* [169 Ind. 25], 80 N. E. 841 [81 N. E. 721]; *Schoolcrafts* v. *Railroad Co.*, 92 Ky. 233 [17 S. W. 567, 14 L. R. A. 579]; *Chicago, etc., R. Co.* v. *Stahley*, 62 Fed. 363 [11 C. C. A. 88]; *Callahan* v. *Railroad Co.*, 170 Mo. 473 [71 S. W. 208, 60 L. R. A. 249, 94 Am. St. Rep. 746]; *Id.* 194 U. S. 628 [24 Sup. Ct. 857]; *Railroad Co.* v. *Ivy*, 73 Ga. 504.'

"The railway company asked a rehearing for the sole purpose of a reconsideration of what was referred to as the very important Federal question involved, viz., 'the unconstitutionality of the Indiana statute, as applied to the facts of this case.'"

The court affirmed the judgment below. The language quoted by Justice White from the opinion in the court below appeals to us. The plaintiff was aiding in the construction of an addition to the roundhouse used for the storage of engines. He was hurt while carrying a window cap to be placed over a window in the oil room, which presumably is used for storing the oil used in the engines housed in the roundhouse while being prepared to be used in drawing trains.

We think the plaintiff comes within the provisions of section 1, and is not within the exceptions of section 7, of the act. See, also, *Indianapolis Street R. Co.* v. *Kane,* 169 Ind. 25 (80 N. E. 841, 81 N. E. 721); *Chicago, etc., R. Co.* v. *Stahley,* 62 Fed. 363, 11 C. C. A. 88; *Swoboda* v. *Railroad Co.* 87 Neb. 200 (127 N. W. 215 138 Am. St. Rep. 483).

Judgment is affirmed.

STEERE, MCALVAY, BROOKE, BLAIR, STONE, OSTRANDER, and BIRD, JJ., concurred.