BEWERNITZ v. DETROIT, JACKSON & CHICAGO RAILWAY.

1. STREET RAILWAYS—NEGLIGENCE—KILLING OF STOCK—HIGHWAYS AND STREETS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action against an interurban railroad to recover for the loss of cows killed by one of defendant's cars while they were being driven on a highway on which the railroad ran, where it appeared that the cows were in such condition that it was necessary that they be allowed to travel at their leisure; that plaintiff allowed them to travel on the railroad tracks as they desired, from time to time, and that defendant's motorman could see the cattle a half mile away, *held*, that it was a question for the jury whether plaintiff exercised due care in the manner of driving the cattle at the time and under the circumstances.

2. SAME—HIGHWAYS AND STREETS—TRESPASS—STOCK—RIGHTS OF PUBLIC.

Allowing of cattle to range over the portion of the highway occupied by the car tracks did not constitute a trespass, as such portion of the highway is not divested of its character as a public thoroughfare.

3. SAME—TRIAL—INSTRUCTIONS.

In such action an instruction that the rights of the plaintiff and defendant in the highway were equal, and that

defendant did not have an exclusive right to that portion of the highway where its tracks ran, but must operate its cars with the understanding that others have rights on the highway, *held*, to be correct.

4. SAME—HIGHWAYS AND STREETS—DUTY OF USER—NEGLIGENCE.
   The rights and obligations of an interurban railroad running on a highway, and the driver of cattle on the highway, upon meeting, are mutual, according to the attending conditions, emergencies, and legitimate use each is making of the highway.

5. SAME — HIGHWAYS AND STREETS — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE.
   It is the duty of an interurban railroad to operate its cars with regard to known existing conditions and dangers, and when its lines running through the country lay open and unguarded along a public road, free to use for travel to all who have occasion, the increased hazards arising from such conditions cannot be ignored and the questions of negligence and contributory negligence are to be tested by the mutual rights and duties resting upon those legitimately using the highway for their particular purpose, as applied to surrounding conditions and facts shown.

6. SAME—KILLING STOCK—NEGLIGENCE—QUESTION FOR JURY.
   In such action, where it appeared that defendant's motorman had a straight view from the switch at which the car was standing for the passage of another car for half a mile, and could see the cattle on the track, from time to time, and was running the car at a speed of 45 miles per hour at the time of the accident, *held*, that it was a question for the jury whether defendant was guilty of negligence.

7. SAME—RATE OF SPEED—LEGISLATIVE QUESTION—NEGLIGENCE.
   While the limit of speed permissible for interurban cars is a legislative, and not a judicial, question, the fact that a car is traveling at a speed of 45 miles an hour may be negligence as a matter of fact, according to the conditions, although the courts could not hold that such speed is, as a matter of law, conclusively negligent.

8. SAME—TRIAL—INSTRUCTIONS—APPEAL AND ERROR.
   In such action, defendant could not complain of the instruction of the court to the jury that even though they might find that the cows were upon the track some dis-
   195 Mich.—34.

tance back from where the accident occurred, if they found that at the time the car was at such a distance from the cows that it could be stopped, going at the rate of speed it was going, and that the cows were clear of the track and afterwards suddenly darted upon the track when the motorman was unable to stop his car, the plaintiff could not recover; such instruction being favorable to defendant.

9. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS.
   Where an equal number of witnesses are called on both sides in a civil case an instruction that the jury must not count witnesses is not reversible error.

Error to Wayne; Codd, J. Submitted January 3, 1917. (Docket No. 20.) Decided March 30, 1917.

Case by August Bewernitz against the Detroit, Jackson & Chicago Railway for damages for the negligent killing of certain cattle. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Moody,* for appellant.

*Edward M. Vining,* for appellee.

STEERE, J. Plaintiff recovered a verdict and judgment against defendant in the circuit court of Wayne county in the sum of $325 as damages for the loss of three cows killed on September 20, 1913, by one of defendant's interurban cars at a point about three miles west of Dearborn on a highway known as Michigan avenue, along the northerly side and within the limits of which defendant's track ran.

Plaintiff owned and operated a dairy farm in the township of Nankin, situated about a mile west of the village of Inkster, in Wayne county, and was driving some cows, which were heavy with calf and soon to become new milch cows, westerly from near Dearborn, where they had been at pasture, to his home farm, where he could better watch and care for them. He was assisted by an employee, and the two rode

during most of the time in a buggy slowly following the cows so as to allow them to move leisurely along, not wishing to crowd or worry them on account of their condition. Shortly before the accident the animals had turned aside and ran down a connecting highway called the "Gully road," rendering it necessary to go around and head them back on to Michigan avenue. This incident tended to disturb and frighten them, and just as they were again back on Michigan avenue an electric car of defendant passed them going west, in the direction they were being driven. After this they settled down and again walked along Michigan avenue in the right direction with plaintiff and his man following as before. About half a mile west of where the first car passed them was located a switch at which defendant's cars passed each other. An east-bound car was then standing on this switch awaiting the passage of the one coming from the east. After the west-bound car passed the switch the east-bound started, coming down the track towards the cattle with increasing speed until it was running about 45 miles an hour, and, when it reached where the cattle were, killed three cows which had gone upon the track. The testimony is undisputed that there was a clear view along the track. The car was plainly visible to plaintiff and his man while and from the time it was standing upon the switch, as were also the cattle to those upon the car, for the same distance. The car was being operated by a so-called "student" who was learning to operate it under direction of the regular motorman, who was on the car sitting in the vestibule eating his dinner.

The facts are practically undisputed; the only claimed material issue in or as to the testimony being whether any of the cattle were upon the track a sufficient length of time for the motorman to have seen them in time to stop his car before striking them.

Appellant assigns as error refusal of the court to direct a verdict because "plaintiff was guilty of contributory negligence in the manner in which he drove the cows in the highway." "There was no negligence shown on the part of the defendant in the operation of this car," and the charge of the court was erroneous in instructing the jury that "the rights in the highway, gentlemen, are equal. * * * The railway company has no exclusive right to occupy that part of the highway, and must operate its cars with the understanding that others have rights upon the highway with themselves. * * * You are not to count witnesses."

Defendant's claim that plaintiff was conclusively guilty of contributory negligence as a matter of law is based upon the evidence that he and his helper sat in a buggy following the cattle at a distance of 8 or 10 rods without attempting to confine them to the traveled roadbed and keep them off that portion of the highway occupied by defendant's track. This contention is apparently based upon the theory that, if the cattle were allowed to range upon defendant's track as they were being driven along the highway, it was a trespass committed at the owner's peril; defendant being under no obligation to look out for trespassers or take any precautions for their safety beyond refraining from wantonly running them down when seen upon the track.

The same thought permeates the discussion of defendant's assignment of error upon the court's statement that rights in the highway are equal, and defendant did not have exclusive right to that portion of the highway where its tracks ran, but must operate its cars with the understanding that others have rights upon the highway. In so stating, with the explanation given in that connection, the court was not in error. Defendant's right to run its line along this

highway did not divest that portion occupied by its tracks of its characteristics as a public thoroughfare. It was yet all a highway, open to public travel. Plaintiff was neither a trespasser nor guilty of negligence as such *ipso facto* in not keeping the animals he was driving along the highway confined to any particular portion of the public way.

"Street railway companies have no such proprietary interest in the portion of the street upon which their tracks are laid as limits the rights of the general public to use the same territory as a part of the public highway, so as to impose upon travelers the duty of keeping themselves and horses out of the way of cars on such tracks." 2 Nellis on Street Railways, § 417.

Plaintiff had as much and equal right to use the highway for the purpose of driving his cattle slowly along it as defendant did to run its interurban cars swiftly along it. The rights and obligations of the meeting parties were mutual, according to the attending conditions, emergencies, and legitimate use each was making of the common thoroughfare. Moving flocks and herds of domestic animals from place to place, as the business interests of their owners require, by driving them along public thoroughfares, is as legitimate and innocent a use of the highways as is running rapid transit railway cars upon them. Although the cars are confined to tracks and cannot turn aside, it is the duty of their owners to operate them with regard to known existing conditions and dangers, and when their lines running through the country lay open and unguarded along a public road free to use for travel by all who have occasion, the increased hazards arising from such conditions cannot be ignored, and the questions of negligence and contributory negligence are to be tested by the mutual rights and duties resting upon those legitimately using the highway for their particular purposes, as applied to surrounding conditions and facts shown.

Of his manner of driving the cattle and reasons for not trying to keep them off defendant's track, plaintiff testified that they were "going to be milk cows soon," and "we did not want to run them, * * * they were so heavy with calf that it hurts them"; that they let them go at their leisure; "part of the time there would be one on the track and sometimes two on the track and again three, and then they would buck off; that is the way they went along"; that the motorman had a straight view from the switch for half. a mile, and plaintiff supposed the plainly visible cattle were signal enough to the approaching car. The employee who was assisting plaintiff testified:

"Some of them were on the track all the time. They were not all on the track all of the time; one or more was on the track all the time. You could not keep them off the track."

The student operating the car was not a witness. The regular motorman, who was with him, but eating his dinner when the car left the switch, testified that the accident happened about half way between the switch and the Gully road; that shortly before it occurred he got up and saw three head of cattle about 160 feet ahead just coming upon the track; that the student reversed the car, and "my hand went over his like that, and I run about 300 feet after I reversed it and killed all three cattle"; that when the accident occurred they were running about 45 miles an hour. Two passengers testified that, their attention being attracted by something, they looked out and saw the cattle close to the track, coming upon it just as the brakes were applied, and the car almost instantly struck them. The conductor testified that he was in the closet when they hit the cattle, and had left the student operating the car while the regular motorman was eating his dinner; that it was broad daylight, and there was no trouble in seeing a cow at least half

a mile ahead down the track; that as he remembers it the cattle were shoved or bunted after being struck by the car some 275 or 300 feet.

In support of the contention that a verdict should have been directed in its favor, defendant's counsel cite, as controlling, *Kotila* v. *Railway Co.*, 134 Mich. 314 (96 N. W. 437), and *Nissly* v. *Railway Co.*, 168 Mich. 676 (131 N. W. 145, 135 N. W. 268, Am. & Eng. Ann. Cas. 1913C, 719). In each of those cases a single animal wandering at large suddenly and unexpectedly appeared upon the track a short distance ahead of the car, and it was held in substance that the owner who intentionally or negligently allowed his animal to run at large could not recover for its death, in the absence of evidence that the motorman saw or should have discovered it in a position of danger in time to have checked or stopped the car and avoided the accident. In this case plaintiff was with his cattle driving them along the highway to his farm. The question whether he exercised due care in the manner of driving them, at the time and under the circumstances disclosed, was, we think, one upon which the minds of reasonable men might reach different conclusions and fairly for the jury to decide from the facts shown. There was clearly abundant testimony bearing upon the negligence of the student motorman to take that question to the jury. Both the conductor and regular motorman testified that at the time of the accident the speed of the car was 45 miles an hour. With these cattle in sight from the time he left the switch, being driven within the narrow confines of the highway towards and inevitably about to meet him, moving irregularly as they traveled, and, if plaintiff's testimony is true, some of them upon the track all or most of the time, he speeded up his car to what can well be claimed beyond safe control for such a meeting and swept down the track towards them.

It is true, as counsel contend and cite authority to show, that this court has held the limit of speed permissible for interurban cars is a legislative, and not a judicial, question, and the court cannot hold that a speed of 45 miles an hour is as a matter of law conclusively negligent, but it has never held that as a matter of fact it might not be negligent under certain conditions, and therefore a question for the jury.

In the *Nissly Case*, cited by defendant, where there was evidence the car was running 40 miles an hour, the court said:

"It is undeniable, however, that if his rate of speed was unreasonably great it would be negligent, and we are of the opinion that, if the motorman was running his car so fast that he could not have stopped it within the distance that this colt could have been seen upon a straight track, the jury might have been justified in finding the speed unreasonable."

The charge of the trial court was, if anything, conservatively favorable to the defendant upon the question of the operator's negligence. The jury were told:

"That even though you may find that the cows were upon the track some distance back from the accident, if you find that at the time the car was at a distance from the cows, such a distance that it could be stopped going at the rate of speed it was going, and if you should find that the cows were clear of the track, and afterwards suddenly darted upon the track when the motorman was unable to stop his car, of course, then the plaintiff cannot recover."

It is further urged that the remark of the court to the jury, "You are not to count witnesses," is reversible error under the ruling in *Dupuis* v. *Traction Co.*, 146 Mich. 151 (109 N. W. 413). In that case there were numerous witnesses, not only to the claimed accident itself, but others testified to experiments made and the effect of centrifugal force as bearing upon how the accident might, or might not, have happened, and

in charging the jury touching preponderance of evidence the court said:

"The number of witnesses has nothing to do with the case."

This court there said:

"It is always the duty of the jury to consider the number of the witnesses as well as the quality of their evidence in determining where the truth lies."

In this case, aside from a witness who testified only as to the values of the cows killed, which was not disputed, each side called just three witnessès. Under such a state of facts it is difficult to see how the inadvertent interjection of the court that they should not be counted could be regarded as favorable or prejudicial to either side. If it can be called an error at all under such circumstances, its effect, if any, is mathematically apportioned impartially between the parties without prejudice, and we cannot affirmatively find that it resulted in a miscarriage of justice.

The judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.