BRUCE *v.* MICHIGAN CENTRAL RAILROAD CO.

1. MASTER AND SERVANT—RAILROADS—NEGLIGENCE—STATUTES.
   Act No. 104, Pub. Acts 1909, 2 How. Stat. (2d Ed.) § 4110, which abolishes the fellow-servant doctrine as to common carrier railroads, and permits recovery if the negligence of plaintiff was of lesser degree than that of his co-employés, changes the common-law rules relating to contributory negligence as heretofore applied in this State, and permits a recovery if the fault of plaintiff was less than that of defendant's servants: the provision does not mean that a plaintiff chargeable with contributory negligence can only recover if defendant was guilty of gross negligence. The language of the proviso, section 2, has no reference to the three degrees of negligence as known at common law.

2. SAME—ASSUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE.
   Under the provisos of section two of the act, the defenses of contributory negligence and assumed risk are not available, if the failure of the defendant to comply with statutory provisions for the safety or protection of employés caused the injury, or if the negligence of plaintiff was less than that of defendant.

3. SAME—TRIAL—ARGUMENT.
   In arguing the case to the jury, plaintiff's counsel did not commit error requiring the reversal of the case, in attempting to argue matters not sustained by the evidence, where the court interposed and corrected the statement, which plaintiff's attorney promptly withdrew.

4. SAME—RAILROADS—RULES.
   Plaintiff, who was injured while at work in a cinder pit underneath a locomotive, which was started without warning, was not barred from recovering by a rule of defendant that foremen and car repairers or other workmen of the car department must display a flag before commencing to work about or under cars, since he was not employed in such department and was not a foreman or car repairer.

Error to Bay; Collins, J. Submitted January 2, 1912. (Docket No. 1.) Decided November 8, 1912.

Case by George Bruce against the Michigan Central Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Cooley & Hewitt (Humphrey & Grant*, of counsel), for appellant.

*Hall, De Foe & Henry (L. P. Coumans*, of counsel), for appellee.

MOORE, C. J. This is an action brought by the plaintiff for damages alleged to have been sustained by him while in the employ of the defendant company. His right arm was cut off by the wheel of a locomotive tender while he was at work in an ash or cinder pit, a sketch of which is shown on the following page.

He bases his right to recover under the provisions of Act No. 104 of the Public Acts of 1909 (2 How. Stat. [2d Ed.] § 4110). The only negligence claimed and for which recovery is asked is the moving of an engine from the cinder pit in the yard toward the roundhouse without ringing the bell before starting the engine. The plaintiff recovered a verdict on which judgment was duly entered for the sum of $4,457. The case is brought here by writ of error.

Neither counsel discuss in the brief the question of the constitutionality of the law, and for that reason we make no further reference to that phase of the case. The claim of defendant is stated in part as follows in the brief:

"It is the contention of defendant in this case, through its attorneys, that, briefly stated, this statute is simply declaratory of the common law as it now exists in this State, under the decisions of this court, with the single exception that the statute takes away the defense of contributory negligence where the duty violated by the defendant, which causes the injury, is a statutory duty enacted for the benefit of its employés."

Counsel then quote from the act, and argue that the degrees of negligence were used advisedly. We again quote from the brief:

" It is the contention of defendant that this provision of the statute is merely declaratory of the law as it existed before the passage of this act, and that is, that by the use of the term ' degree,' in speaking of negligence, such lan-

guage was used in its ordinary acceptation and meaning; that through the decisions of this court negligence is understood to be of two degrees in Michigan—ordinary negligence, and what is known as gross negligence. This statute, being declaratory of the common law, meant that,

if the defendant was guilty of gross negligence, the plaintiff's ordinary negligence would not bar recovery."

It is also argued that if the negligence of both was ordinary, or if both were guilty of gross negligence, there could be no recovery. These propositions are argued at great length; counsel citing authorities. It may be well to quote here the provisions of Act 104 which are germane to this discussion. The provisions of section 1 are broad enough to establish liability whenever negligence on the part of the defendant occurs. Section 2 reads as follows:

" In all actions hereafter brought against any such common carrier railroad company under or by virtue of any of the provisions of this act to recover damages for personal injury to an employé, or where such injuries have resulted in his death, the fact that the employé may have been guilty of contributory negligence shall not bar a recovery: *Provided,* That the negligence of such employé was of a lesser degree than the negligence of such company, its officers, agents or employés: *Provided further,* That no such employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier railroad company of any statute enacted for the safety of employés contributed to the injury of such employé, and such employé shall not be held to have assumed the risk of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé."

It will not be necessary to quote the other sections of the statute.

The important questions are, what do the provisos in the section mean? It is said that, when taken in connection with the other provisions of the act, they are declaratory of the common law. If that was the sole purpose in enacting the law, why was the legislature to the trouble of passing the statute at all? The decisions of this court had declared what the common law is in almost every conceivable case which could arise between a common carrier railroad company and its employés, and, if this

statute did nothing more, the work of the legislature in its enactment would seem to be unnecessary. The word "degree" in the first proviso would seem to be the source of much trouble. We think, reading the act as an entirety, we should get at the meaning of the legislature, if we read the first proviso as though it read as follows: Provided that the negligence of such employé was less than the negligence of such company, its officers, agents or employés. This was the construction of the trial judge, and we think it the proper construction. A reference to any standard dictionary for a definition of the word "degree" will show that this construction of the meaning of the proviso is not at all forced.

The second proviso of section 2 is also the source of trouble. It is said: The defenses of contributory negligence and assumed risk on the part of the plaintiff are not available as defenses, where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé, but that they are available as defenses in all other cases. This is not our interpretation of the statute. We gather from the language of the statute that these defenses are not available at all in cases where the violation of any such statute contributed to the injury or death. Nor may they be urged if the negligence of the employé is less than the negligence of the company, its officers, agents, or employés, while they are available if the negligence of the employé is not less than the negligence of the company, its officers, agents, or employés. This construction, it seems to us, harmonizes all the provisions of the statute.

A group of assignments of error relate to the argument of counsel. It is said:

"The effect of this language upon the jury must be apparent as tending to inflame them against a railroad company so unmindful of its employés as to violate the rules made by it for the safety of its employés and running over

them when their danger was known to the company or those in charge of its engines."

As to this phase of the case, the record discloses the following:

"During Mr. Couman's argument to the jury the following occurred:

"*Mr. Coumans:* Why did the man Davis, down there with his men, not have a flag out? Because he knew that the people on that engine paid no attention in God's world to a flag. They don't look for it, and a man standing on the ground—

"*Mr. Humphrey:* Note an exception to that.

"*The Court:* There is not a particle of testimony to that effect.

"*Mr. Coumans:* I will withdraw it, if there is no testimony. I understood him to say that.

"*The Court:* The testimony don't show it.

"*Mr. Coumans:* I will withdraw the proposition.

"*Mr. Humphrey:* Give us an exception to it.

"*Mr. Coumans:* Now, I ask you in all fairness what good is it going to do any man to ring a bell if that engine is coming onto him with such force that he could not get out of the way, even if he heard the bell ring?

"*The Court:* Mr. Coumans, your claim of negligence is that the bell was not rung. It is highly advisable for you to keep within your case, if you wish to sustain a verdict in this court.

"*Mr. Coumans:* Under that, we are entitled to recover unless our negligence was such, as I undertand the court will charge you, grosser than what theirs was under that particular circumstance. Greater negligence—

"*Mr. Humphrey:* I take exception to that.

"*Mr. Coumans:* To what?

"*Mr. Humphrey:* It has not got to be greater. It is equal or greater."

The jury were told in the charge in various ways that, if the negligence of the plaintiff was equal to or greater than the negligence of the other employés, he could not recover. We think the trial court took care of this feature of the case.

The following exhibit was offered in evidence:

"MICHIGAN CENTRAL RAILROAD CO.

"Car Department.

"SPECIAL NOTICE.

"To Foremen and Car Repairers:

"Car repairers and other employés of this department, who have occasion to work on or about cars, are strictly forbidden to commence work on any car, the nature of which might require them to place themselves in a position on, under or about the car, whereby its movement on the track would result in injury to them, *without first properly protecting said car with a blue flag or flags by day or blue lights at night.* Any employé disobeying the above order will be liable to instant discharge.

"Foremen are instructed to rigidly enforce the above order, and to keep a supply of blue flags and lanterns for that purpose constantly on hand.

"Foremen are also instructed to provide each of their car repair men with a copy of this notice, to fully explain it to them and to procure their acknowledgment thereof on this blank."

Neither the plaintiff nor the foreman put out a flag. It is said this special notice applied to the plaintiff, and for that reason he cannot recover. When hurt, he had not commenced work upon any car, nor was he about to do so. He was not employed in the car department. He was neither foreman nor car repairer. We do not think this rule or notice applied to him.

The case was carefully tried and submitted to the jury in a clear and intelligent charge.

The judgment is affirmed.

STEERE, McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred.   Bird, J., did not sit.