REVOLINSKI *v.* MANISTEE & NORTHEASTERN RAILROAD CO.

1. RAILROADS—MASTER AND SERVANT—STATUTES—NEGLIGENCE.

Where plaintiff was engaged in repair work in the employment of defendant railroad company, regularly working in the car shops, although his duties frequently took him outside to work upon engines, cars, machinery, and rolling stock, and it appeared that the car shop in which he usually worked was located a few feet from the roundhouse, that the engines and locomotives were put in the roundhouse for repairs and that plaintiff was injured as he was going to begin repair work upon an engine that was not in the roundhouse but standing on the repair track nearby, he was a shop employee within the meaning of section 7 of Act No. 104, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 4116), and he was not entitled to recover for the negligence of a fellow-servant.

2. SAME.

A fellow-employee of the plaintiff engaged in work as a foreman who, in moving an engine from the roundhouse, permitted the steam dome to stand or remain upon top of the cab in backing the engine from the roundhouse, during which operation the dome struck the top of the doorway and was knocked off, striking plaintiff, was a

fellow-servant and not a vice-principal, and plaintiff was not entitled to recover from the defendant railroad company under the common law counts of his declaration.

3. SAME—MASTER AND SERVANT—SHOP EMPLOYEE.
    The effect of Act No. 104, Pub. Acts 1909, as to employees who were engaged in outside work, although employed in the shop, was not to except from its operation such employees as were working in the shops at the time of their injury merely, but was intended to relate to employees who were engaged in employment that might be distinguished by the general description of work in a shop or office.

4. SAME—ROUNDHOUSE.
    The roundhouse in which engines are repaired and kept in the ordinary operation of the railroad is a shop within the meaning of the statute.[1]

Error to Manistee; Withey, J. Submitted April 8, 1915. (Docket No. 20.) Decided June 7, 1915.

Case by Peter Revolinski against the Manistee & Northeastern Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Wilson & Johnson,* for appellant.

*Benjamin & Betzoldt,* for appellee.

STEERE, J. On April 3, 1912, while in defendant's employ as a car repairer in its shops at Manistee, Mich., plaintiff was struck and injured by a steam dome jacket falling from an engine which was being moved through a door of defendant's roundhouse, and later recovered, in the circuit court of Manistee county, a verdict and judgment of $550, as damages for personal injuries then sustained. Plaintiff's declaration contained two counts, one alleging negligence

[1] As to employees in shop, etc., within the purview of statutes abrogating the fellow-servant rule, see note in 47 L. R. A. (N. S.) 117.

under the common law, and the other under Act No. 104, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 4110 *et seq.*), which deprives common carriers by railroads of certain common-law defenses in actions for personal injuries brought by employees, including that of negligence on the part of a fellow-servant. The trial court held that plaintiff could not recover under the common-law count, as it appeared that the negligence complained of, so far as shown, was that of a fellow-servant, but submitted the question of defendant's negligence to the jury under the statutory count, denying a motion and requests of defendant's counsel that the court direct a verdict in its favor because it appeared by the undisputed evidence that at the time of said alleged injury plaintiff was a shop employee, expressly excepted and not entitled to the benefit of said act under section 7, which is as follows:

"The provisions of this act shall not apply to employees working in shops or offices."

That the kind of work plaintiff was engaged to perform placed him within the class employed for shop or office work, as distinguished from the class of railroad employees whose duties involve the special risks and unusual dangers of operative service in running trains, track work, etc., is plainly established by his own testimony. He was employed at defendant's shops, not in the operation of its road, but in putting such of its rolling stock as became out of repair in condition for operation. His work was limited to this, whether done inside or outside of a building. He had worked as a car repairer most of the time for 15 years, being, as he states, a "handy man doing woodwork and ironwork repairs on cars of all kinds, engine tanks, and cabooses," and "had worked in these car shops the last time about a year and a half." His place of employment was in the car shops, where he regularly worked, though occasionally his

duties took him outside for a short time. Of this he testifies:

"My work, generally speaking, was in the car shop, and I spent most of the time there unless I was ordered out. It was only occasionally I was ordered to work outside the shops."

The car shop in which plaintiff usually worked stood within a few feet of the roundhouse, which contained seven stalls, with doors opening to a turntable just outside. The engines, or locomotives, were repaired in the roundhouse where the machine and boiler shops, or rooms, were. Various other buildings, such as the oilhouse, paint shop, casting shed, storage sheds, etc., were located in the shopyards conveniently adjacent, the oilhouse being just back of the roundhouse. A "warehouse track" passed near the turntable, with "dead engine tracks," or "cinder tracks," leading from it with switch connections to the turntable.

When an engine was turned out after general repairs, it was customary to have a man from the car shops go to it and pack the boxes, oil the tank, etc. Plaintiff was injured while on such a mission. The men sent from the car shop to pack the journal boxes, etc., of the engines, would find them either on the dead, cinder, or warehouse track if not still in the roundhouse. On the day of the accident, in the afternoon, the foreman of the car shops directed plaintiff to look up engine No. 4, oil its journal boxes, look it over and see whether there was anything wrong under the tank or with the brake rods and such things. This engine was not in the roundhouse and plaintiff did not know just where it was located, but on receiving his order he stepped into the roundhouse for an oil can, passed through a rear door into the oilhouse, where he filled the can and turned back, passing through the roundhouse to the turntable on his way

to the dead engine track beyond, where he expected to find engine No. 4. Engine No. 21, which was in the roundhouse for repairs, was just at that time about to be moved out upon the turntable to run it into another stall for further work upon it. Plaintiff crossed the track upon which it stood, and stopped for a moment to talk with an employee who was holding the sweep of the turntable to receive the engine, which was headed in, and just then was moved slowly backward towards the turntable by the foreman of the roundhouse, who was in the cab operating the engine with compressed air. The engine had been placed in the roundhouse for repair about a month before, and was then stripped of its steam dome jacket, which was placed on the top of the engine cab, as was customary. As the engine moved out, this steam dome jacket struck the top of the doorway and was thrown off the cab, striking and injuring plaintiff as it fell.

It is contended here in behalf of plaintiff, as in the trial court, that the foreman, whose carelessness caused the accident and who had charge and control of the roundhouse, was a vice principal, and the doctrine of safe place is involved. We deem it sufficient to state upon this question, without extended discussion, that under the well-settled fellow-servant rule as interpreted by former decisions of this court, we find no error in the ruling that there could be no recovery under the common-law count in plaintiff's declaration.

Upon the trial counsel for both parties conceded that under the evidence the question of whether section 7 of said Act No. 104 applied to plaintiff was one of law for the court to decide. It is undisputed that at the immediate time of the accident plaintiff, though in the line of his duties, was not at work inside the walls of a shop. For that reason it was the opinion

of the trial court that he did not come within the exception of said section; that, though hired to work in shops or offices, it did not apply to any employees during the time their duties compelled them to do outside work, construing the section as intended to except such employees only "while actually working in the shops or offices." We are impressed that such construction of a general law, based upon an individual case, disregards the distinguishing characteristics of the kinds of employment upon which the legislative classification under consideration is founded.

Cases before this court involving said Act No. 104 throw little light upon the question in issue here. In *Ferguson* v. *Railway Co.*, 169 Mich. 260 (135 N. W. 268), plaintiff was a mason's tender, working on the construction of an addition to defendant's roundhouse, and was injured by the falling of a scaffold caused by the negligence of a fellow-workman. Liability was denied on the ground that he was working in a shop. It was manifest that he was not of the class of employees nor doing the class of work, belonging to shops and offices. The court, therefore, held that he did not come within the exception. *Bruce* v. *Railroad Co.*, 172 Mich. 441 (138 N. W. 362), involved other questions arising out of the act, and no claim appears to have been made that plaintiff was of the excepted class. In *Boesler* v. *Railroad Co.*, 184 Mich. 430 (151 N. W. 560), it was conceded that whether plaintiff was a shop employee or not was a question of fact for the jury, the only error assigned being rejection of certain evidence claimed to be material upon that issue.

Plaintiff was not injured while engaged in more dangerous work outside his shop. He was not yet doing any actual work outside, but was out of the shop and had started to go a short distance to where the engine upon which he intended to work stood on

a dead engine, or storage, track.   When injured he was subject to no greater or different risks than if he had gone out of the shop to get a tool, or for any other temporary purpose, such as passing from one building to another in the performance of his duties. Whether it was more dangerous to pack the journal boxes on the dead engine track than in the round-house, where it was sometimes done, is not shown, but, if so, he was not engaged at that work when injured.   Neither was the work he was about to do outside the line of his employment.   It was the concluding job of repairing, sometimes done inside the roundhouse and sometimes in the yard outside.   Below, foreman of the roundhouse testified without contradiction that this was a "short job" and:·

"It is the general custom for the men in the car repair shop to look after the journal boxes on engines;   *   *   *   that department oils the journal boxes and repairs the tanks.   I have never known a fireman to put oil in journal boxes."

This question has been well considered and thorously reviewed by the supreme court of Wisconsin, which has a statute, passed in 1907, closely resembling in its general purpose our act of 1909.   Section 7 of the Michigan act is in the identical language of section 9 of the Wisconsin act.   In *Kiley* v. *Railway Co.*, 138 Wis. 215 (119 N. W. 309, 120 N. W. 756), the statute was before the court of last resort to test its validity and was sustained after exhaustive review, three opinions being filed.   It is there said, amongst many other things:

"The exemption of shop and office employees from the operation of the law seems an appropriate one, because they are not engaged in that part of the business which exposes them to the unusual dangers and hazards of the business, nor does their conduct bear so directly in securing the safety of the public.   *   * *.   'The question to be considered, however, is the dis-

tinction between the classes as classes, whether they are characteristics which, in a greater degree, persist through the one class than in the other, which justify legal discrimination between them.' We are of opinion that the office and shop employees are sufficiently distinct in their employment and relation to the conduct of the railroad business to justify the legislature, within the field of its discretion and with regard to public policy, in exempting them from the operation of the law."

The same case was before the court in 142 Wis. 154 (125 N. W. 464), and the act again considered, in two separate opinions, sustaining the former decision. In further discussing this question it was said, in part:

"As to the provision exempting shop and office employees from the operations of the act, a different question arises. This is undoubtedly classification, or rather subclassification, of employees. * * * Nor is classification to be condemned by the courts because the situation of certain individuals in one class may not differ materially from the situation of certain individuals in another class. * * * Speaking generally of the shop and office employees as a class, they are in less danger from the negligence of coemployees, and perform duties less directly and vitally connected with the public safety than train employees and track repairers, who constitute a very large percentage of the other class, and we cannot say that the differences are not such as would justify a reasonable mind in concluding that they suggest the propriety of substantial differences in legislative treatment."

Following these decisions, the question of the status of a shop employee, when temporarily engaged in the line of his work outside a shop, arose in *Ruck* v. *Railway Co.*, 153 Wis. 158 (140 N. W. 1074). Ruck was a boiler maker employed in defendant's shops at Milwaukee, and was sent to assist in repairing a boiler from a wrecking train, lying on the ground near the roundhouse at Galewood, and while so en-

gaged was injured. Though not then actually work-
ing in any shop, nor even in the city where the shops
in which he usually worked were located, it was held
that he was nevertheless in the excepted class, and
still to be considered an employee working in a shop
within the meaning of the statute, the court saying,
among other things:

"A shop employee who goes into the shopyard or
even a great distance from the shop for the purpose
of performing the kind of labor which is ordinarily
done in the shop is, we think, within this exception.
The words 'employees working in shops or offices'
must therefore, we think, include that class employed
for such service whether actually within the walls of
the shop or not, * * * although outside the shop
at the time of the injury."

The State of Minnesota has a statute abolishing
the common-law fellow-servant rule as to employees
of companies owning or operating railroads, which
contains no exception of any class, as do the Wiscon-
sin and Michigan acts, and a different rule prevails
in that jurisdiction. A case, however, arose in that
State involving an accident which occurred at Stevens
Point, Wis., entitled *Koecher* v. *Railway Co.*, 122
Minn. 458 (142 N. W. 874), wherein the facts were
very similar to those in the instant case. Koecher was
employed as a machinist in defendant's roundhouse
at Stevens Point, and while going from there to an
engine standing outside, a short distance away, upon
which he was working, he was struck and injured by
another engine through the negligence of a coem-
ployee. Finding that the Wisconsin statute applied,
the court held plaintiff was within the excepted class,
and to the contention that a roundhouse was not a
"shop" said:

"We think the term in this statute is used in that
sense, and that a roundhouse in which machinists are
regularly employed for the purpose of making repairs

is a shop within the meaning of the statute. Both the character of the work and the class of employees is the same as in other railroad shops, and under the Wisconsin rule we see no escape from the conclusion that plaintiff was a shop employee at the time of the accident."

For the foregoing reasons, the judgment is reversed, and no new trial granted.

Brooke, C. J., and McAlvay, Kuhn, Stone, Ostrander, Bird, and Moore, JJ., concurred.